[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-14723

_____

D. C. Docket No. 03-00246-CR-CB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

FREEMAN E. JOCKISCH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(December 16, 2005)

Before ANDERSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

The Defendant was convicted in federal district court of various mail fraud

charges and appeals his conviction, arguing, among other things, insufficiency of the evidence and improper jury instructions. We conclude that the Defendant's claims are insufficient to warrant reversal and affirm his conviction on all counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the early 1990s, Freeman Jockisch owned Jockisch Automatic Sprinkler, a company licensed to install fire sprinklers in commercial buildings in Alabama. In 1995, Jockisch stopped running the company and began working with Reed Fire Protection, a company that installed fire sprinklers in public and private buildings under renovation or construction in the Mobile, Alabama, area but that, at the time, did not itself possess a permit to install sprinklers. In return for the use of his sprinkler permit, as well as engineering work, Jockisch was paid a portion of the profits of Reed Fire Protection.

In 1992, Jockisch was elected County Commissioner of District Two in Mobile. The Commission provides for the safety and welfare of the citizens by administering a budget and delivering public services to the community. As part of his job as Commissioner, Jockisch was required to complete state-mandated ethics forms detailing his personal finances, including any economic interests he had with businesses.

Between 1997 and 2002, Reed Fire Protection began bidding and working on

public projects in Mobile County, including the construction of a new county office building (the Michael Square project) and the construction and renovation of public school buildings. In his capacity as Commissioner, Jockisch voted on the budgets and hiring of general contractors for the Michael Square project, and voted on funding allocations for the Mobile County School Board construction projects at nine different locations. Reed Fire Protection was hired as a subcontractor for those projects, and as a result of Reed's involvement in the construction and Jockisch's relationship with Reed, Jockisch received significant financial benefits related to the construction contracts. Jockisch did this, the Government alleged, while failing to fully and honestly disclose his relationship to Reed Fire Protection in the ethics and economic interest forms he was required to complete.

Jockisch was indicted by a grand jury in November 2003, which was followed by a superseding indictment in February 2004. The superseding indictment alleged Jockisch's financial gains from Reed Fire Protection's contracts and Jockisch's failure to disclose his involvement with the company constituted a scheme to defraud the citizens of Mobile County of the right to his honest services as a Commissioner in violation of 18 U.S.C. §§ 1341 and 1346. The indictment charged four separate honest services mail fraud schemes: (1) counts One through Five (the Michael Square project) (2) counts Six through Sixteen (the school

3

projects) (3) counts Seventeen through Twenty (filing falsified ethics forms), and (4) counts Twenty-One through Twenty-Four (converting campaign funds to personal use). The first three schemes alleged that Jockisch used the United States Postal Service to receive checks from Reed Fire Protection for payments for work the company performed on projects Jockisch had voted on, as well as to mail ethics and economic interest forms he had filled out with the intent to mislead the public and hide his relationship with Reed.

The fourth scheme alleged that Jockisch had converted funds held in his campaign account for personal use. The Government claimed this constituted mail fraud because to hide his conversion of campaign funds, Jockisch had misrepresented the amount of campaign-related contributions he received when he filled out state-mandated summaries of contributions and expenditures which were sent through the mail.

Finally, the Government charged in counts Twenty-Five through Twenty-Eight that for tax years 1998-2001, Jockish had willfully under-reported his total income when filing his income tax returns in violation of 26 U.S.C. § 7206. The Government claimed that Jockisch had done so despite the fact that he knew and believed his actual income was substantially in excess of what he reported on the returns.

4

At the close of the Government's case, the defendant moved for judgment of acquittal on all counts. The district court denied the motions as to counts One through Twenty and Twenty-Five through Twenty-Eight, but reserved ruling on the campaign finance mail fraud scheme (counts Twenty-One through Twenty-Four). Following the presentation of all evidence, the defendant renewed his motion for judgment of acquittal on all counts. This time, the district court granted the motion with regard to the campaign finance counts but denied the motion as to all other counts.

Shortly before closing arguments, the district court announced that it was reconsidering its ruling with regard to the motion for judgment of acquittal for counts Six through Sixteen (the school projects). The case was given to the jury, which returned a verdict of not guilty on counts One through Five, but guilty as to all the remaining counts.

The district court, concerned about the sufficiency of evidence supporting counts Six through Sixteen, asked the parties to brief the following issues: (1) whether there was sufficient evidence presented from which the jury could have determined that the defendant took discretionary action in his official capacity that benefitted his undisclosed personal interest and (2) whether the defendant could still be convicted on those counts if there was no evidence that he took

discretionary action in his official capacity that benefitted his undisclosed personal interest.

The district court's concern arose because the defense had presented evidence at trial that the Alabama legislature had ordered the City of Mobile and the County to give the School Board funds in order to alleviate its financial burden. The defendant claimed that his votes on the Commission were therefore "mandatory," not discretionary, and that in the alternative, the funds allocated by the Commission were used for operational expenses, not construction projects.

The district court answered its first question in the affirmative, finding the jury could have determined that "[a] reasonable construction of the evidence is that by helping to keep the school system operating, the County helped to keep the School Board's construction projects afloat. Since the defendant's company was a subcontractor on a number of those projects, the defendant also benefitted." Order of July 19, 2004 at 8. The court dismissed the second issue as moot. The result was to affirm the jury's verdict to convict on counts Six through Sixteen.

Jockisch's appeals raises five issues for this court:

(1) whether the district court's failure to instruct the jury on the "materiality" element of mail fraud is plain error;

(2) whether the evidence of the defendant's discretionary action as Commissioner

benefitting his personal financial interests is sufficient to sustain a conviction on counts Six through Sixteen;

(3) whether the evidence of mailing of the checks related to School Board contracts is sufficient to sustain a conviction on counts Seven through Sixteen;

(4) whether counts Six, Seven, and Eight are time-barred by the five-year statute of limitations;

(5) and whether the sentences for the tax count convictions should be reconsidered if the mail fraud counts are overturned.

## II. STANDARDS OF REVIEW

Challenges to statements or omissions in a jury instruction which were not made before the trial court are reviewed for plain error. <u>Johnson v. United States</u>, 520 U.S. 461, 466-68, 117 S.Ct. 1544, 1548-49 (1997); <u>United States v. Meester,</u> 762 F.2d 867, 879-80 (11th Cir. 1985).[1] An appeal attacking the sufficiency of evidence is a question of law to be reviewed de novo. The test is whether–with all reasonable inferences and credibility choices made in the government's favor–a reasonable trier of fact could conclude that the evidence establishes guilt beyond a

---

[1] Under plain error review, the defendant has the burden of demonstrating (1) error from the lower court's action (2) that was plain, clear, and obvious (3) that affected his substantial rights. If these three prongs are satisfied, the defendant must then show that the error (4) affected the fairness, integrity, or public reputation of the judicial proceedings.

reasonable doubt.  United States v. Miles, 290 F.3d 1341, 1355 (11ᵗʰ Cir. 2002).

An appeal relying on the statute of limitations is a challenge alleging defects in the

indictment.  Because this challenge is being raised for the first time in this appeal,

it is waived.  United States v. Ramirez, 324 F.3d 1225, 1227-28 (11ᵗʰ Cir. 2003)

(holding that a statute of limitations defense raised for the first time during trial

was waived, construing a previous version of Federal Rule of Criminal Procedure

12, that was not substantively different from the current version).[2]

## III. DISCUSSION

### A. The absence of an instruction on "materiality" before the jury.

The Government charged Jockisch under 18 U.S.C. §§ 1341 and 1346 with a

"scheme or artifice to defraud" the citizens of Mobile County of their right to his

"honest services." The Supreme Court has held that "materiality of falsehood is an

element of the federal mail fraud, wire fraud, and bank fraud statutes."  Neder v.

United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 1841 (1999).  Materiality is therefore

clearly an element that must be proven to the jury in order to obtain a conviction on

these charges.  On appeal, Jockisch claims that the judge's failure to specifically

---

[2] Therefore we decline to address defendant's fourth ground for appeal–the statute of
limitations challenge.

8

instruct the jury on the element of "materiality" constituted plain error.[3]

To address the defendant's claim, we look first to the precise instructions given at trial. The jury in Jockisch's case was told that the Government was required to prove beyond a reasonable doubt that:

> [The] Defendant knowingly devised a scheme to fraudulently deprive the public of the intangible right of honest services as charged. That the Defendant did so willfully and with an intent to defraud and that the Defendant used the United States Postal Service by mailing or causing to be mailed some matter or thing for the purpose of executing the scheme to defraud.

Trial Transcript at 1090.

The judge's instructions to the jurors did not specifically define the concept of "materiality of falsehood." The instructions were, however, virtually a verbatim recitation of the 11th Circuit's 2003 Offense Pattern Jury Instruction Number 50.2. Moreover, the district judge defined the terms in the above instruction in greater detail for the jury. He described a "scheme" as "any plan or course of action intended to deceive or cheat someone," and said that "to act with intent to defraud means to act knowingly and with the specific intent to deceive someone ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self." Trial Transcript at 1090-91.

---

[3]The parties agree that Jockisch did not preserve an objection to the instruction in the district court.

9

In <u>United States v. Fern</u>, 155 F.3d 1318 (11th Cir. 1998), this court reviewed a trial court's failure to specifically instruct a jury on materiality in a case involving a defendant's conviction under 42 U.S.C. § 7143(c)(2)(A) for knowingly making false material statements in documents filed in accordance with the Clean Air Act. In <u>Fern</u>, we held, "The jury's finding that Fern acted 'knowingly' in this case is, in our view, so closely related to the materiality issue that it is functionally equivalent to a materiality finding. Accordingly, the district court's failure to properly describe the elements of a false statement offense under section 7413(c)(2)(A), if error, was harmless in this particular case." <u>Id.</u> at 1329. The same rationale applies in this case. For the jury to convict Jockisch of the charged offenses, it had to find that he "knowingly devised a scheme to fraudulently deprive the public of the intangible right of honest services." This was sufficiently close to a finding of materiality that any error in failing to instruct on materiality did not affect the substantial rights of Jockisch, and therefore did not rise to the level of plain error.

Moreover, both parties made closing arguments to the jury that focused on the issue of materiality. The Government emphasized that Jockisch's failure to disclose his relationship to Reed Fire Protection was a significant omission, arguing that when he "signed this [financial disclosure form] under oath and he swears and affirms, that means something, or it should. . . . We should expect just a

10

little bit more from someone we're paying out of our tax dollars." Trial Transcript at 1020.  In its closing, the defense claimed that the relationship between Jockisch and Reed Fire Protection was not hidden from the public and that the omission on the disclosure form was meaningless: "Anybody that was interested in Reed at all or anybody interested in Jockisch at all could have gone out there and seen them doing the work that they did." Trial Transcript at 1055.

Under plain error review, the defendant has the burden of proving not only plain and obvious error, but error affecting his substantial rights that also affected the fairness, integrity, or public reputation of the judicial proceedings.  Johnson, 520 U.S. at 466-67, 117 S.Ct. at 1548-49; see also United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779 (1993) (holding that courts of appeal should only correct a forfeited error at the trial level "in those circumstances in which a miscarriage of justice would otherwise result").

Defendant was unable to point to any manner in which he was substantially adversely affected by the error.  No one suggested that materiality was not relevant, and the fact that the arguments of counsel focused on that very issue – i.e., the significance of the failure to fully disclose conflict of interest information – makes it unlikely that the absence of an instruction adversely affected Defendant's rights, especially in light of the closely related instruction.  No matter how the Defendant

11

frames the issue, no "miscarriage of justice" or damage to the "fairness, integrity,

or public reputation of judicial proceedings" would result by upholding Jockisch's

conviction. The district court's alleged failure to specifically instruct the jury on

the concept of materiality does not rise to the level of plain error.  As a result, relief

must be denied.

B. The "No Discretionary Action" claim.

The Defendant's second ground for appeal attacks the sufficiency of the

evidence presented at trial.  Specifically, Jockisch argues that the evidence on

counts Six through Sixteen (the School Board construction charges) was not

sufficient to sustain the conviction because he did not misuse his office to further

his personal interests.[4]

An "honest services" fraud occurs when an official "secretly makes his

decision based on his own personal interests [thereby] defraud[ing] the public of

_____

[4] The defendant's third ground of appeal argues that insufficient evidence was presented linking the checks sent to Jockisch with the School Board projects from counts Seven through Sixteen.  Since the evidence demonstrated Jockisch worked on a number of projects for Reed totally unrelated to the school construction projects, the defendant contends that there is insufficient evidence linking the checks to the school construction work.

The evidence suggested that rather than paying him on a project-by-project basis, Reed Fire Protection paid Jockisch a salary or lump sum every two or three months.  The checks need not have included a notation in the subject line detailing the purpose of the payments for the jury to determine the money was tied to the school construction work.   We conclude that the evidence was sufficient for a jury to find that the money paid by Reed to Jockisch via the checks was related to the school projects.

his honest services." <u>United States v. Lopez-Lukis</u>, 102 F.3d 1164, 1169 (11th Cir. 1997). The defendant claims the Alabama legislature's appropriation requirement–which ordered the Commission to give money to the Mobile County School Board–demonstrates that there was no nexus between Jockisch's role as Commissioner and his receipt of payment for engineering work for Reed Fire Protection's subcontract on the school construction projects. Because the Alabama legislature required the County to allocate the funds to the School Board, Jockisch argues that he took no discretionary action based on his own personal interests, and therefore the evidence was insufficient to convict him of mail fraud on the school project charges.

Jockisch's challenge comes to us as a challenge to the sufficiency of the evidence. Thus we assume all reasonable inferences and questions of credibility in favor of the government. The defendant's only evidence supporting his claim that he did not exercise discretionary action with regard to the state-mandated appropriations was a witness, whose credibility was weighed by the jury. Evidence of the "mandatory" nature of the payments to the School Board was presented by the defense through Charles Wilcox, the former assistant superintendent for business operations for the Mobile County School Board. He testified at trial regarding the County Commission's annual contributions to the Board and the

Board's use of those funds. Wilcox testified that the contributions began in 1991 or 1992 when the school system was deeply in debt and the school superintendent was threatening to close the schools after a tax referendum failed at the polls. To pull the School Board out of debt, the state legislature ordered the City of Mobile and the County each to contribute $1.2 million annually to the school system for a period of ten years.[5]

After careful consideration of Jockisch's argument that he had no discretion with respect to the $1.2 million annual allotments to the School Board and thus could not have intended to serve his own personal interests by his votes, we reject his argument for a number of reasons.[6] According to Wilcox, the County was "ordered by the State of Alabama to make the payments. If they had refused to

---

[5] The defense also claimed that the funds allocated to the School Board from the County were limited to being used for "operational expenses," but the evidence does not support this contention. Wilcox testified that the County's contributions were placed in the School Board's general fund and that, while the general fund money was not used for construction projects, it *could* have been used for such a purpose. He further testified that money from the general fund was sometimes combined with capital fund money to repair and maintain the schools. Trial Transcript at 788-89.

[6] Jockisch also suggests that because the County Commission and the School Board are entirely separate entities, and because the School Board used a competitive bidding process to select contractors for its construction projects, Jockisch's actions as a Commission member could not have benefitted his personal interests. This argument is not persuasive because the jury could have found that although Jockisch did not know which general contractor would be selected or whether that contractor would employ Reed Fire Protection as a sub-contractor, Jockisch knew the appropriations would enhance the Board's financial position, increasing the likelihood it would undertake construction projects and the likelihood his company would get work.

14

vote, they'd have been in trouble with the State." Trial Transcript at 808. But Wilcox also testified that while the County Commissioners voted to make the annual payments of $1.2 million, the City of Mobile, which was operating under the same mandate from the state, successfully negotiated out of the 10-year payment plan by paying the School Board $4 million up front. Trial Transcript at 788, 801. No evidence was presented by either party that suggested that the County was not free to try to structure a similar deal in order to avoid annual payments to the School Board. Because the County Commission, including Jockisch, had discretion to attempt to negotiate lesser payments but did not exercise that discretion, Jockisch's argument that he lacked discretion is undermined.

In addition, the evidence presented at trial revealed that Jockisch voted to authorize a one-time $5 million payment from the County to the School Board in August 2001. This $5 million vote was in addition to the $1.2 million annual allotment and clearly was not "required" of the County Commissioners.

Also, the evidence offered by the Government in support of the Michael Square charges (Counts One through Five) reflects on the defendant's state of mind with regard to the school construction projects. Larry Wettermark, the County attorney, testified that he confronted Jockisch about the potential conflict of

15

interest between Jockisch's work for Reed Fire Protection and his work as a Commissioner on the Michael Square project. According to Wettermark, Jockisch immediately called Doug Reed, his partner at Reed Fire Protection, and told him to withdraw as subcontractor. Wettermark testified to hearing this phone conversation, and to confirming with Jockisch some time afterward that Reed was no longer involved in the Michael Square construction.

A reasonable jury could conclude that Jockisch deceived Wettermark. Doug Reed testified at trial that he and Jockisch continued the initial phone call after Wettermark had left Jockisch's office. During that call, Jockisch suggested that rather than withdrawing as subcontractor, Reed Fire Protection should continue to have its employees work on the project, but should request that the checks for payment be issued to Precision Fire Protection, a company owned and operated by Doug Reed's brother. In Doug Reed's words, "[H]e [the Defendant] suggested doing it that way to where – I guess where he couldn't get tied into it." Trial Transcript at 349. The jury was free to view this testimony as a reflection on Jockisch's credibility and, more directly, as evidence that Jockisch understood the nature of his conflict as a County Commissioner and co-owner of Reed Fire Protection, and intentionally sought to conceal its revelation.

A jury looking at the totality of the evidence could have concluded that, at

16

least after 2000, any revelation of Jockisch's conflict with respect to the school projects–either by abstaining from the votes or otherwise disclosing the conflict to his colleagues–would have jeopardized Jockisch's financial interests in other Reed Fire Protection subcontracts, such as the Michael Square project. Even prior to that, and prior to 2001 when the clearly discretionary $5 million allocation was voted for the schools, the evidence showed Jockisch had a personal interest in concealing his conflict on the school projects. Revealing his relationship with Reed during that time could have jeopardized Reed's ability to bid on the school projects or on other county-related projects, which would have adversely affected Jockisch's personal income. This evidence, plus the evidence that Jockisch failed to exercise his discretion to attempt to negotiate lesser payments to the School Board, is sufficient evidence to support the jury's rejection of Jockisch's "no discretion" argument.

This court will reverse a conviction based on insufficient evidence only if "no reasonable trier of fact could have found guilt beyond a reasonable doubt." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004), cert. denied,125 S.Ct. 324 (2004).

The evidence demonstrated that over a five-year period, Reed Fire Protection made nearly half a million dollars on the school construction projects, and at no time during that period did Jockisch properly disclose his business interest in Reed

or tell the County Commission or its members of his conflict of interest. Jockisch could have divested himself of his interest in Reed, or could have properly reflected his interest on the required ethics forms, or could have abstained on the votes relating to projects in which Reed and Jockisch would benefit. But instead each time he voted for the appropriations. The evidence that defendant made no attempt to renegotiate state-mandated payments (as the City of Mobile had done), his votes to authorize the annual $1.2 million allotments instead of abstaining, and his clear exercise of discretion in voting the $5 million payment, as well as the unrestricted nature of the funds given to the School Board, presented the jury with sufficient evidence upon which to convict the defendant.

AFFIRMED.[7]

---

[7] Because of our disposition of the other four issues, the fifth issue is dismissed as moot.