[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 02-13256

———————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 12, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00377 CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL GUNN,
ROLANDO RODRIGUEZ,
GILBERTO RIVERO,
ROBERTO FERNANDEZ CUESTA,
a.k.a. Roberto Fernandez Cuerto,
LAZARO CANTILLO,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

**(May 12, 2004)**

Before EDMONDSON, Chief Judge, CARNES and DUHE*, Circuit Judges.

————————————

* Honorable John M. Duhe, Jr., United States Circuit Judge for the Fifth Circuit, sitting by designation.

PER CURIAM:

Defendant-Appellants Lazaro Cantillo, Roberto Fernandez Cuesta, Manuel Gunn, Gilberto Rivero, and Rolando Rodriguez were convicted of (1) conspiracy to possess cocaine with intent to distribute five kilograms or more under 21 U.S.C. § 846; (2) attempted possession of cocaine with intent to distribute five kilograms or more under § 846; (3) conspiracy to use and carry a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(o); and (4) using and carrying a firearm during and in relation to a drug trafficking crime under § 924(c). Cantillo, Fernandez-Cuesta, and Rivero were also convicted of possession of a firearm by a convicted felon under § 922(g)(1).

All defendants appeal their convictions. Fernandez-Cuesta and Rivero appeal their sentences. We affirm the convictions and sentences of Cantillo, Fernandez-Cuesta, Gunn, and Rodriguez. We affirm all of Rivero's convictions except for his conviction for possession of a firearm by a convicted felon, which we vacate.

BACKGROUND

In March 2001, after Cantillo asked a government informant about robbery targets, the informant arranged a meeting between Cantillo and Agent Carlos Canino, who pretended to be a drug courier wanting to rob his source. On 16 March, Cantillo met with Agent Canino to plan the armed robbery of no less than 10 kilograms of cocaine. Cantillo brought Fernandez-Cuesta and Gunn to the meeting, but Gunn stayed in the car.

At the meeting, Agent Canino commented on Cantillo's Latin Kings (a gang) tattoo. The tattoo displayed a crown, an AK-47, and the words "100% Killer." Cantillo then introduced Fernandez-Cuesta, and the three men discussed the robbery. Defendants agreed they would split 7 kilograms of the cocaine, and Agent Canino would keep the other 3 kilograms. Agent Canino promised to provide a car with a hidden compartment to stash the drugs, and he told Cantillo and Fernandez-Cuesta that armed people would be at the stash house.

On 21 March, Agent Canino met again with Cantillo and Gunn. The three discussed the cocaine and the possible gunfire at the robbery. Agent Canino also spoke with Cantillo and Fernandez-Cuesta by telephone several times to discuss details of the robbery. During one call, Agent Canino told Fernandez-Cuesta that

3

Gustavo, an informant, would tell defendants where the stash house was. On 5 April, Agent Canino called Cantillo to tell him the cocaine was arriving that day. That day, Gustavo told Cantillo to meet him at a certain gas station.

Cantillo and the other defendants met Gustavo at the station and followed him to a warehouse. Cantillo and Rivero arrived at the warehouse in a Buick, and Gunn, Fernandez-Cuesta, and Rodriguez arrived in a Mitsubishi with a tag registered to Gunn. After defendants entered the warehouse, Agent Canino telephoned with the address of the stash house, which Cantillo started writing down.

Thereafter, the police arrested defendants. Fernandez-Cuesta and Gunn were placed in one police car and Cantillo, Rivero, and Rodriguez in another. Both cars had recording devices. In the car, Fernandez-Cuesta and Gunn lamented their bad luck and how they had been fooled by Agent Canino. The two also discussed the firearms and their legal liabilities. In the other police car, Cantillo begged Rivero and Rodriguez to keep quiet. Rivero and Rodriguez compared their cover stories for the police. The three defendants also discussed the firearms, expressing relief that the guns were clean of fingerprints and found in the car rather than on defendants.

The district court admitted the police-car recordings and the gang-related testimony but denied jury instructions on entrapment. The jury convicted defendants on all counts charged.

DISCUSSION

I.  Sufficiency of the Evidence.[1]

This Court reviews <u>de novo</u> whether sufficient evidence supports a conviction. <u>United States v. Tarkoff</u>, 242 F.3d 991, 993 (11th Cir. 2001). On review, the Court views the evidence in the light most favorable to the government, reversing only if no reasonable trier of fact could have found guilt beyond a reasonable doubt. <u>Id.</u>

A.  Use, Carrying, or Possession of Firearms.

All defendants challenge the sufficiency of the evidence for their § 924(c) convictions. To sustain a conviction under § 924(c), the government must show

---

[1]All defendants challenge the sufficiency of the evidence for their convictions of conspiracy and attempted possession. We conclude the evidence was sufficient to support their convictions.

that, during and in relation to their conspiracy to rob cocaine, defendants used, carried, or possessed a firearm in furtherance of that conspiracy.  See 18 U.S.C. § 924(c).  Possession may be actual or constructive, joint or sole.  United States v. Crawford, 906 F.2d 1531, 1535 (11th Cir. 1990).

To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm or the vehicle concealing the firearm.  Id.  The government must also establish some nexus between the firearm and the drug trafficking offense to show possession was in furtherance of the crime.  United States v. Timmons, 283 F.3d 1246, 1252-53 (11th Cir. 2002).  And under § 924(c), a defendant may be liable for a co-conspirator's possession if possession was reasonably foreseeable.  United States v. Bell, 137 F.3d 1274, 1274-75 (11th Cir. 1998).

In this case, the loaded firearms were found in the Mitsubishi automobile in the warehouse where defendants were waiting for the address of the stash house.  As occupant of the Mitsubishi and owner of the tags on the vehicle, Gunn, controlled the vehicle and, therefore, had -- at least -- constructive possession of the firearms.  Because defendants conspired to commit armed robbery of cocaine, possession of firearms by their co-conspirator Gunn was reasonably foreseeable.  And the conspiracy satisfies the nexus requirement between the firearms and the

drug trafficking offense. Therefore, we conclude the evidence was sufficient to convict defendants of firearms possession.


B.      Felon-in-Possession.


Cantillo, Fernandez-Cuesta, and Rivero also challenge the sufficiency of the evidence for their § 922(g)(1) convictions of being a felon-in-possession of a firearm. Although Cantillo, Fernandez-Cuesta, and Rivero were found guilty of firearms violations under § 924(c), it does not necessarily follow that they are guilty of being felons-in-possession under § 922(g)(1). Sections 924(c) and 922(g)(1) are separate statutes with separate and distinct elements, and evidence sufficient to support a conviction under one statute may not be sufficient for conviction under the other.

More important, under § 924(c), a defendant may be found guilty based upon the acts of a co-conspirator. While co-conspirator liability may be available under § 922(g)(1), we need not decide that question today because at oral argument the government expressly disavowed reliance upon that theory of liability. Therefore, we consider only whether the evidence was sufficient to

convict defendants of being felons-in-possession based upon their own acts, without regard to co-conspirator liability.

At trial, the district court properly charged the jury that a defendant could be found guilty of violating § 922(g)(1) if the government proved beyond a reasonable doubt that the defendant knowingly possessed a firearm and had been previously convicted of a felony. On possession specifically, the district court used these words:

> A person who knowingly has direct physical control of something is then in actual possession of it. A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in constructive possession of it.

The jury instructions were not challenged on appeal and are consistent with the law of this Circuit.

A defendant has constructive possession if he exercises ownership, dominion, or control over the firearm. Crawford, 906 F.2d at 1535. A defendant also has constructive possession if he has the power and intention to exercise dominion or control. United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979). The defendant may exercise that dominion and control either directly or through others. See, e.g., United States v. Thomas, 321 F.3d 627, 636 (7th Cir. 2003);

United States v. Van Horn, 277 F.3d 48, 55 (1st Cir. 2002); United States v. Hardin, 248 F.3d 489, 498 (6th Cir. 2001).

We conclude that the evidence was sufficient to sustain the convictions of Cantillo and Fernandez-Cuesta. But we conclude, based on the evidence presented, that an objectively reasonable jury could not have made the same finding about Rivero.

The evidence showed that Cantillo was the leader of the conspiracy. Briefly stated, he solicited the opportunity to steal narcotics; he organized the attempted robbery; and he recruited his co-defendants. During one conversation about the robbery, Cantillo stressed his leadership by telling Agent Canino: "I'm ready; my warriors, my soldiers are ready."

Because Cantillo led the conspiracy, a rational jury could have inferred that he, directly or through others, controlled -- or at least had the power and intention to control -- the firearms even though he did not arrive in the Mitsubishi, the car in which the guns were found. See United States v. Hernandez, 995 F.2d 307, 313 (1st Cir. 1993) (upholding defendant's § 922(g)(1) conviction because jury could reasonably infer that defendant, as the conspiracy leader, controlled his co-conspirators and their firearms); United States v. Aiello, 864 F.2d 257, 263 (2d Cir. 1988) (stating that a jury could reasonable infer defendant's constructive

9

possession of drugs in part because defendant "instituted and controlled the drug activity").

For Fernandez-Cuesta, the evidence showed that, next to Cantillo, Fernandez-Cuesta was the key player in organizing the conspiracy to commit armed robbery. Cantillo introduced Fernandez-Cuesta as his "partner" at the their initial meeting with Agent Canino. Several times after that meeting, Fernandez-Cuesta dealt alone with Agent Canino about the details of the robbery. During one telephone conversation, Agent Canino told Fernandez-Cuesta that the cocaine would be in soon; and Fernandez-Cuesta replied, "Just give me a ring at the moment . . . . I'll get going, I'll go get the personnel that we will all be there (sic)."

The evidence also showed Fernandez-Cuesta was a passenger in the Mitsubishi and had knowledge of the firearms in the Mitsubishi. Fernandez-Cuesta's knowledge of the firearms coupled with his leadership role and his proximity to the firearms provide sufficient evidence for a reasonable jury to conclude that Fernandez-Cuesta had the power and intention to exercise control over the firearms. Therefore, we conclude that sufficient evidence supported Cantillo's and Fernandez-Cuesta's § 922(g)(1) convictions.

Unlike Cantillo and Fernandez-Cuesta, Rivero was not a principal player in the conspiracy. He never met with or spoke to Agent Canino to help plan the

robbery. In the record, Rivero comes into the picture only once before the day of the robbery. And, unlike Fernandez-Cuesta, he did not arrive at the warehouse in the Mitsubishi; he arrived in a car containing no guns. The evidence did show that Rivero had knowledge of the firearms, but knowledge alone is insufficient to prove constructive possession. Because the record shows only that Rivero knew about the firearms, we conclude that the evidence is insufficient to prove Rivero had actual or constructive possession of the firearms. For that reason, we vacate his § 922(g)(1) conviction.

II.     Admission of Evidence.

Cantillo, Fernandez-Cuesta, Gunn, and Rivero challenge the admission of gang-related evidence at their trial. This Court reviews evidentiary rulings for abuse of discretion. United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990). We will not reverse if an error had no substantial influence on the outcome. Id. Under Fed. R. Evid. 404(b), evidence of bad acts is inadmissible "to prove the character of a person to show action in conformity therewith." And, under Rule 403, evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice."

11

For Fernandez-Cuesta, Gunn, and Rivero, any error in admitting the evidence was harmless error because the government did not argue that they were gang members or that the gang was related to the crime and because the district court gave the jury a limiting instruction on the proper use of the gang-related evidence. Thus, for those three defendants, the district court did not abuse its discretion in admitting the evidence.

For Cantillo, we need not determine whether the evidence was inadmissible under Rule 403 or 404(b) because any error was harmless -- other convincing evidence supports the verdict and any error had no substantial influence on the jury's verdict. See United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) (stating that error is harmless "where there is overwhelming evidence of guilt" or "the error had no substantial influence on the outcome and [other] sufficient evidence . . . supports the verdict" ). The facts recounted above show Cantillo's extensive participation in all offenses. Therefore, the admission did not affect Cantillo's substantial rights.

III.    Jury Instructions.

Cantillo, Fernandez-Cuesta, and Gunn argue the district court erred in denying a jury instruction on entrapment and sentencing entrapment.[2] Rivero also argues the district court erred in denying a sentencing-entrapment instruction. This Court reviews the denial of jury instructions for an abuse of discretion. United States v. Morales, 978 F.2d 650, 652 (11th Cir. 1992).

To have a traditional entrapment defense, a defendant must present evidence that "government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985). Before Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), this Court had refused to recognize sentencing entrapment as a defense. See United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992). But we need not decide whether sentencing entrapment is a valid defense because defendants have not presented evidence sufficient to raise such a defense.

Neither Cantillo, Fernandez-Cuesta, Gunn nor Rivero presented sufficient evidence to raise an entrapment defense. All three defendants willingly sought to

_____

[2]The sentencing-entrapment defense relates to the amount of cocaine involved. Defendants argue the government chose 10 kilograms as the amount to be the subject of a robbery to subject them to a longer sentence.

participate in the robbery and willingly agreed to steal 10 kilograms of cocaine. Although the government may have suggested the amount, defendants did not object to stealing 10 kilograms. And the amount to be stolen remained constant right from the start and throughout the conspiracy. No evidence suggests that the government coerced defendants into agreeing to 10 kilograms or that defendants were reluctant to steal that amount. Indeed, no evidence indicates the government pushed any part of the conspiracy upon defendants. Therefore, the district court did not abuse its discretion by denying the jury instructions.[3]

IV.    Sixth Amendment Right to Counsel.

Fernandez-Cuesta, Gunn, and Rodriguez argue that the district court erred in admitting the recordings of defendants' conversations because the statements were obtained in violation of the Sixth Amendment. Because defendants raise this issue first on appeal, we review for plain error. See United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999).

---

[3]Cantillo also argued that the district court erred in denying a continuance for him to call an additional witness for his entrapment defense. That argument is without merit.

14

The Sixth Amendment prohibits admission of statements deliberately elicited by the government from the defendant after adversary criminal proceedings have begun, unless the defendant's counsel is present or the defendant waives his right to counsel.[4]  Massiah v. United States, 84 S.Ct. 1199, 1203 (1964).  Elicitation is more than mere listening.  Kuhlmann v. Wilson, 106 S.Ct. 2616, 2630 (1986).  Because the police only listened to defendants' conversations, admission of defendants' statements did not violate the Sixth Amendment.  Therefore, the district court did not commit plain error by admitting the recorded conversations.

V.    Sentencing.

Rivero also challenges his sentence.[5]  We review de novo a district court's interpretation of the sentencing guidelines and its application of the guidelines to the facts.  United States v. Pinion, 4 F.3d 941, 943 (11th Cir. 1993).

---

[4]This discussion assumes, without deciding, that defendants' right to counsel had attached.

[5]Fernandez-Cuesta challenges his sentence too.  We conclude that his arguments are without merit.

15

Rivero argues that the district court improperly classified him as a career offender by interpreting a "crime of violence" to include attempted burglary.[6] Section 4B1.2(a)(2) defines a "crime of violence" in relevant part as a felony offense that "is burglary of a dwelling, . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Attempted burglary presents a serious potential risk of physical injury to another. An uncompleted burglary does not diminish the potential risk of physical injury. E.g., United States v. O'Brien, 972 F.2d 47, 50-53 (3d Cir. 1992) (interpreting parallel language of 18 U.S.C. § 924(e)(2)). Therefore, the district court properly classified Rivero as a career offender.

For the reasons stated above, we AFFIRM the convictions and sentences of Cantillo, Fernandez-Cuesta, Gunn, and Rodriguez. We affirm all of Rivero's convictions except for his § 922(g)(1) conviction, which we VACATE. We see no merit in Rivero's objections to his sentencing, but because we vacate his § 922(g)(1) conviction, we VACATE his sentence and REMAND for resentencing in the light of our vacatur of his § 922(g)(1) conviction.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

---

[6]Although Cantillo adopted Rivero's argument, the argument is particularly without merit for Cantillo because he was convicted of burglary rather than *attempted* burglary.

16