[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11234
Non-Argument Calendar
_____

D.C. Docket No. 1:98-cr-00263-DMM-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


RAUL DE LA CRUZ-SOSA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 26, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Raul De La Cruz-Sosa appeals the district court's revocation of his supervised release for possessing a firearm. This is Cruz-Sosa's second appeal of his revocation. After Cruz-Sosa's first appeal, this Court remanded the case so that the district court could clarify its factual findings regarding Cruz-Sosa's firearm possession. Cruz-Sosa now appeals the district court's order on remand. After review, we affirm.

## I.    BACKGROUND

### A.    2011 Petition for Revocation

After pleading guilty to drug trafficking offenses, Cruz-Sosa served a 135-month sentence. In March 2008, Cruz-Sosa was released from prison and began serving a five-year term of supervised release. At the same time, Cruz-Sosa was also on probation for a Florida conviction. As a condition of his federal supervised release, Cruz-Sosa was prohibited from possessing a firearm.

In July 2011, Cruz-Sosa's federal probation officer, Nelson Valenzuela, received a tip from an informant that Cruz-Sosa carried a firearm. Valenzuela advised Cruz-Sosa's state probation officer, Christine Bullins, of the tip. That evening, Bullins and other local law enforcement officers performed an administrative search at Cruz-Sosa's residence and found a loaded handgun in the

2

bedroom closet.  Federal probation officer Valenzuela petitioned the district court for Cruz-Sosa's arrest and to revoke Cruz-Sosa's supervised release for possessing a firearm.

## B.    2011 Revocation Hearing

At a final revocation hearing, federal probation officer Valenzuela testified, over Cruz-Sosa's hearsay objection, that on July 1, 2011, "a gentleman" informant told Valenzuela that Cruz-Sosa "often possesses a firearm which he carries in the small of his back."  Valenzuela explained that he shared the tip with state probation officer Bullins.  After state probation officers performed a search of Cruz-Sosa's residence, they reported to Valenzuela that they had found a handgun.

On cross-examination, Valenzuela stated that approximately six weeks before the search, Cruz-Sosa separated from his wife and moved into a residence owned by Janet Rosillo.  Valenzeula received three or four calls from Cruz-Sosa's wife, who wanted a divorce, asking for Cruz-Sosa's address.  Valenzuela told Cruz-Sosa's wife that he could not release that information to her.

Valenzuela said that, after receiving the tip, he questioned the informant about his identity, ran a records check, and investigated the informant's motive for reporting the tip.  Valenzuela determined that the informant did not have a prior record and had reported the tip because he feared Cruz-Sosa.  On redirect,

Valenzuela confirmed that the search was performed on the same day that he received the tip.

Over Cruz-Sosa's hearsay objection, state probation officer Bullins testified that she received the tip from Valenzuela. In response, Bullins and another state officer, Freddy Vidal, conducted an administrative search at Cruz-Sosa's home. When the officers arrived, Cruz-Sosa was in a bed in a bedroom and appeared to have been sleeping. Bullins searched the bedroom and found a pellet gun in the nightstand drawer and a Taurus .45 caliber semiautomatic pistol with a full magazine and another loaded magazine in the bedroom closet. Bullins found the gun in the closet in a zippered fanny pack. Both Bullins and Vidal testified that only Cruz-Sosa's vehicle was searched.

Janet Rosillo, Cruz-Sosa's girlfriend, testified on behalf of the defendant. Rosillo testified that she owned the home the officers searched, as well as the gun they found. Rosillo explained that she had purchased the gun eleven years ago and produced a firearm permit and a purchase receipt. Rosillo agreed that she kept the gun in a fanny pack along with her jewelry. According to Rosillo, she took the gun over to her sister's home when Cruz-Sosa moved into her home. Rosillo said that on the day of the search, she brought the gun back to her own house to give to her son, but left it in the trunk of her son's car. Rosillo claimed that during the search, one of the officers took the gun from the car and put it in the closet. Rosillo also

4

said that Cruz-Sosa's wife called Rosillo and Cruz-Sosa's house numerous times a day and had left a message threatening to put Cruz-Sosa back in prison. On cross-examination, Rosillo admitted that Cruz-Sosa kept his clothes in the bedroom closet and that when the officers arrived to conduct the search Cruz-Sosa was in the bed next to the closet.

After hearing all the evidence, the district court found that Cruz-Sosa violated the terms of his supervised release. The district court made oral findings of fact, including that Cruz-Sosa was lying in a bed very near the closet where the gun and the magazines were found in the fanny pack, but that Rosillo owned the gun. The district court stated that people who keep things in a closet usually know what is in that closet, but that "even that probably would not be enough" to prove knowledge of the gun by a preponderance of the evidence.

The district court discredited Rosillo's testimony. The district court found that Rosillo made up the story—about an officer searching her son's car, finding the gun and bringing it into the house—to protect Cruz-Sosa and that the clear implication of Rosillo's lie was that Cruz-Sosa knew the gun was in the closet. The district court also noted that, while the court "did not put a lot of weigh in" the anonymous tip, the tip turned out to be true and then Rosillo "lied about it," as follows:

> And you couple that with the circumstance, and I don't put a lot of weight in it because we don't know the identity of the tipster or any of

5

that, this is all started by someone who comes in and says I'm in fear of this guy and he's carrying a gun and they go to the house and lo[] and behold they find a gun and then the girlfriend lies about it.

The district court found that the advisory guidelines range was 30 to 37 months and asked the parties to recommend an appropriate sentence. The government asked for the high end of 37 months, stressing that "the tip that probation got was that the defendant was carrying a firearm around . . . and if that is in fact true, then it's a concern for the safety of the public, including the safety of the person that called in the tip." In response, Cruz-Sosa's counsel advised the court that "to rely on an out-of-court hearsay statement you would have to make a specific finding that that statement had the indicia of reliability," and asked the court to "not rely on that statement and instead look at the fairly scant evidence here." Cruz-Sosa's counsel asked for a sentence at the low end, emphasizing that Cruz-Sosa had not had any trouble in the past or a violent history.

The district court imposed a 30-month sentence, at the low end of the advisory guidelines range.[1] In explaining the chosen sentence, the district court noted that Cruz-Sosa "had not had other problems on supervised release" and that "there is no evidence that he used the weapon although for the reasons stated I find that he was in constructive possession of it."

## C.    First Appeal and Remand

---

[1]Cruz-Sosa is currently serving his 30-month sentence and does not raise any issues regarding the length of his sentence.

6

In his first appeal, Cruz-Sosa argued that the district court had erred by treating Rosillo's discredited testimony as substantive evidence that he was guilty of the violation and, alternatively, that there was insufficient corroborating evidence that he had possessed the gun.

This Court concluded that the discredited testimony of a non-party witness (Rosillo) cannot be the sole substantive evidence of a defendant's guilt, but that a fact finder may draw a negative inference from discredited testimony as long as there is other sufficient, affirmative evidence of guilt.  See United States v. Cruz-Sosa, 498 F. App'x 932, 938-39 (11th Cir. 2012).  The Court determined that it was unclear from the district court's oral findings whether the district court had inferred from evidence other than Rosillo's discredited testimony that Cruz-Sosa had constructively possessed the gun.  Id. at 939-40.  Accordingly, the Court remanded so that the district court could clarify its findings.  Id. at 940.

### D.    District Court's 2013 Order on Remand

On remand, the district court entered an order explaining its findings.  The district court stated that it did not rely on its disbelief of Rosillo's testimony to find that Cruz-Sosa was guilty of the violation.  Instead, the district court "considered the fact that Ms. Rosillo lied, when she was in a position to know the truth about the defendant's possession of the weapon, as a fact or circumstance within a chain of facts and circumstances that tended to prove guilt."

7

The district court outlined the chain of facts and circumstances, which started with the anonymous tip received the same day the search was conducted. The district court stressed that the tip was significant "relative to the timing of the search," but explained that the tip was not the "primary basis" for its ruling because the court "did not know anything about the identity or reliability of the informant."

Instead, the "primary basis" for the district court finding of constructive possession was the "strong circumstantial evidence of possession" found during the search, "especially when considered along with the tip." The district court cited in particular the fact that "[t]he firearm was found in the closet of the bedroom where the defendant was staying." The district court stressed that the defendant was found in the bed when the search began and that his clothes were found in the closet where the gun was stored. The district court reiterated its belief that "usually a person knows of and has possession of that which is within his bedroom closet."

Finally, the district court acknowledged that it had considered whether the gun was Rosillo's alone, given that Rosillo had purchased the gun and shared the bedroom with Cruz-Sosa. The district court explained its decision to discredit Rosillo's testimony, stating that if Rosillo had merely testified that she had kept the gun in the closet without Cruz-Sosa's knowledge, the court might have believed

8

her.  However, Rosillo had testified "that the gun was not in the closet at all," but instead "was in her son's car outside the residence" and that "one of the probation officers or one of the police officers who accompanied them found the gun in the car and brought it into the house and placed it in the closet so that they could arrest the defendant."  The probation officers, on the other hand, had testified that they did not search the cars outside the residence.

The district court explained that Rosillo's testimony required the court to choose whether it was "an unfortunate coincidence or an outright fabrication that the firearm had been returned from the sister's home" the very same day that the tip was received.  The district court found Rosillo's explanation unbelievable and to be "a transparent effort to separate the defendant from the gun in his closet." Later in the order, the district court explained that it did not believe Rosillo's testimony that: (1) Cruz-Sosa's wife had called and threatened to put him in prison; (2) Rosillo took the gun to her sister's house and then returned it on the day of the search; (3) Rosillo brought the gun to the house to give to her son; (4) the gun was in the trunk of her son's car; or (5) the officers planted the gun in the house.

The district court further explained that it had observed Rosillo's demeanor while she testified and concluded that she "was lying to protect the defendant," given that she had no other reason to lie about the gun.  The district court stated that it "drew a negative inference from [Rosillo's] testimony," but that the negative

9

inference was not "the sole-or even primary- basis for [its] ruling."  Instead, it was all of the facts and circumstances "[t]aken together" that persuaded the district court "that the alleged violation of supervised release was more likely true than not true."

The district court concluded by explaining that it would have found that Cruz-Sosa constructively possessed the gun even absent Rosillo's testimony, as follows:

> Had the defense chosen not to present a case and simply rested at the end of the government's case, the state of the evidence would have been that a gun was found in the closet of the bedroom where the defendant was sleeping immediately after law enforcement was informed he had a weapon.  Based on that evidence, I would have found he violated his supervised release.

However, once the defense called Rosillo, "reason and common sense" led the court to conclude that Rosillo "lied because she knew that Mr. Cruz-Sosa possessed the .45 caliber hand gun found in his bedroom closet near the bed in which he was sleeping on the same day law enforcement was told he had a weapon."  Cruz-Sosa appealed the remand order.

## II.  DISCUSSION

### A.    Sufficiency of the Evidence

A district court must revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release prohibiting the defendant from possessing a

10

firearm.  18 U.S.C. § 3583(g)(2).  Possession of a firearm may be actual or constructive.  United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011) (discussing possession of a firearm sufficient to convict for felon in possession), cert. denied, 132 S. Ct. 1943 (2102).  "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm."  Id.  The court may infer constructive possession where the defendant had control of the premises where the firearm was concealed.  United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004).[2]

Here, the district court did not abuse its discretion in finding that Cruz-Sosa violated the condition of supervised release prohibiting him from possessing a firearm.  Officers found the firearm in Cruz-Sosa's bedroom in a closet that also contained Cruz-Sosa's clothes.  When the officers arrived to conduct the search, Cruz-Sosa was lying down on a bed in the bedroom near the closet.  As the district court pointed out, it is undisputed that Cruz-Sosa had control over the bedroom closet where the firearm was found.  This circumstantial evidence is sufficient to support a finding that Cruz-Sosa constructively possessed a firearm.

---

[2]We review for an abuse of discretion a district court's finding that a defendant violated a supervised release condition.  United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994).  We are bound by the district court's findings of fact unless they are clearly erroneous.  United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

Although Rosillo testified that the firearm was found in the trunk of her son's car rather than in the bedroom closet, the district court did not believe her and inferred from her false testimony that she had lied to protect Cruz-Sosa because she knew he had possessed that firearm.  And, as we explained in Cruz-Sosa's first appeal, the district court could draw negative inferences from Rosillo's untruthful testimony "as long as there is other sufficient, affirmative evidence" of Cruz-Sosa's guilt, which there is.  See Cruz-Sosa, 498 F. App'x at 938-39.

There is no merit to Cruz-Sosa's claim that the district court improperly relied on Rosillo's testimony as evidence of guilt.  The district court made clear in its order on remand that it did not rely solely, or even primarily, on Rosillo's discredited testimony in determining Cruz-Sosa's guilt.  Instead, the district court relied "primarily" on the circumstantial evidence that, on the same day officers were told Cruz-Sosa had a firearm, the officers found a firearm in a bedroom closet of the home where he lived, he was sleeping in that bedroom when the search began, and he kept his clothes in the closet where the firearm was stored.  The district court explicitly stated that, had Cruz-Sosa not presented any evidence, it still would have found that he violated the supervised release condition based on this circumstantial evidence.

## B.    Anonymous Tip Evidence

12

Cruz-Sosa argues that the district court erred by considering the hearsay evidence of the anonymous tip without first finding that the evidence was reliable.[3]

Although the Federal Rules of Evidence do not apply in supervised release revocation proceedings, hearsay is not automatically admissible because defendants "are entitled to certain minimal due process requirements," including the right to confront and cross-examine witnesses. United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994). In deciding whether to admit hearsay testimony in a revocation hearing, the district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation," and must find that the hearsay statement is "reliable." Id. Failure to apply the balancing test constitutes error, but this Court will not reverse the district court if the error is harmless. See id. When properly considered evidence sufficiently supports the district court's finding, the failure to engage in the balancing test is harmless error. Id. Moreover, even if the admission of the hearsay evidence violates due process, "the defendant bears the burden of showing that the court explicitly relied on the information." United States v. Taylor, 931 F.2d 842, 847 (11th Cir. 1991). Thus, to show harmful error, the defendant must

---

[3]The government argues that Cruz-Sosa waived this argument by not raising it in his first appeal. We decline to find a waiver here. The extent to which the district court relied upon the tip evidence did not become apparent until the district court entered its remand order clarifying its findings. In fact, in the first appeal, both parties stated that the district court had discounted the tip evidence. Thus, Cruz-Sosa raised the district court's failure to make reliability findings at the first opportunity.

13

show: "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." Id. (internal quotation marks omitted).

Here, at the revocation hearing, the district court overruled Cruz-Sosa's hearsay objection and allowed federal probation officer Valenzuela to testify about the informant's tip that Cruz-Sosa had a firearm. Although the district court's order on remand considered the tip as one of the "facts and circumstances" tending to show Cruz-Sosa's guilt, the order contained no express findings about the reliability of this hearsay statement under Frazier's balancing test.

Nonetheless, the district court's failure to perform Frazier's balancing test was harmless for several reasons. First, Cruz-Sosa has not met his burden to show that the hearsay evidence was materially false or unreliable. Cruz-Sosa relies upon the fact that the informant gave the tip a few months after Cruz-Sosa had left his wife and after Cruz-Sosa's estranged wife had threatened to return him to prison. However, the district court found that Rosillo's testimony about the threat was incredible. See United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) ("The credibility of a witness is in the province of the factfinder, and we will not ordinarily review the factfinder's determination of credibility." (internal quotation marks omitted)). As the district court explained, the probation officer testified that the informant was a man, and there was no evidence that Cruz-Sosa's wife and the

14

informant were connected.  Furthermore, the informant appears to have been reliable insofar as a gun in fact was found in the closet of Cruz-Sosa's bedroom.

Second, Cruz-Sosa did not show that the hearsay testimony about the tip actually served as the basis for the sentence.  The district court made only limited use of the tip evidence.[4]  Specifically, the district court was careful to explain that the evidence of the anonymous tip was "significant" only as to its "timing relative to the search" (i.e., the gun was found the same day the tip was received) because the district court did not know the reliability of the informant, and also that the tip was not the primary basis for its finding of constructive possession.  The district court clearly did not rely on the contents of the tip—that Cruz-Sosa carried a gun in the small of his back—because the district court found that Cruz-Sosa only constructively possessed the firearm.  In fact, the district court gave Cruz-Sosa the low end of the advisory guidelines range in part because "there [was] no evidence that [Cruz-Sosa] used the weapon."

Finally, the district court's error was harmless because, as discussed above, the other, properly considered evidence sufficiently supports the district court's

---

[4]The government argues that the district court used the tip evidence only to explain why the officers searched Cruz-Sosa's residence, and not for the truth of the matter asserted, and thus was non-hearsay.  However, even assuming the district court considered the tip evidence in determining whether Cruz-Sosa had constructive possession of the gun, we still conclude that any error was harmless.

15

finding that Cruz-Sosa constructively possessed the gun and thus violated a term of his supervised release.

### III.  CONCLUSION

For all these reasons, Defendant Cruz-Sosa has not shown reversible error in the district court's finding that Cruz-Sosa constructively possessed the firearm. Accordingly, we affirm the district court's order revoking Cruz-Sosa's supervised release.

**AFFIRMED.**