[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12272

_____

D.C. Docket No. 1:18-cr-20530-UU-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAVIER ESTEPA,
DIEGO ALEJANDRO ESTEPA VASQUEZ,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 25, 2021)

Before LAGOA, ANDERSON, and MARCUS, Circuit Judges.

LAGOA, Circuit Judge:

Javier Estepa and his brother, Diego Estepa-Vasquez, appeal their convictions and sentences for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and wire fraud, in violation of 18 U.S.C. § 1343. Specifically, the brothers argue that the evidence at trial was not legally sufficient to warrant those convictions because (1) the conduct the government alleged, even if true, did not constitute a fraudulent scheme; and (2) the government did not prove that the brothers had the requisite *mens rea*. For the reasons discussed below, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Javier[1] owns Aaron Construction Group, Inc. ("Aaron Construction"), which he operates with Diego. Aaron Construction's business included contracting with Miami-Dade County (the "County") to perform repair work in public housing units that were partially funded by the federal government.

The essential facts, viewed in light most favorable to the government, are as follows. Aaron Construction successfully won its bids on the three Requests for Price Quotes ("RPQ") specified in the second superseding indictment. In 2014, Aaron Construction won its bid on RPQ #152574. In 2015, Aaron Construction won its bid on RPQ #158639. And, in 2016, it won its bid on RPQ #171090. The County

---

[1] For ease of reference, we refer to the defendants by their first names, Javier and Diego.

2

paid Aaron Construction a total of $3,977,438.47 from January 2014 through September 2016 for these bids.

To obtain a contract for a project that involves more than $2,000 in federal funds, the contractor must agree to comply with the Davis-Bacon Act (the "Act" or "Davis-Bacon"), which requires contractors and subcontractors to pay mechanics and laborers the prevailing local wage for their work, as determined by the United States Secretary of Labor.[2]  40 U.S.C. § 3142(a)–(b).  The Act and its implementing regulations include several mechanisms to encourage and monitor compliance.  For example, contractors must, on a weekly basis, create and preserve a certified payroll document that lists all employees, their hours worked, and their pay rate.  *See* 40 U.S.C. § 3145(a); 29 C.F.R. § 3.4(b).  Knowingly and willfully submitting a materially false certified payroll statement is a felony.  *See* 40 U.S.C. § 3145(b); 18 U.S.C. § 1001.  If the contractor pays covered employees at a rate lower than the prevailing local wage, the contracting agency may withhold from the contractor the amount that should have been paid to the employees.  *See* 40 U.S.C. § 3142(c)(3). The contracting agency may also terminate the contract for non-compliance with the

---

[2] By its terms, the Act applies only to contracts to which the federal government or the District of Columbia is a party.  40 U.S.C. § 3142(a).  Related provisions, however, extend the Act's wage requirements to federally-funded housing projects.  *See* 29 C.F.R. pt. 1, app. A; *id.* § 5.1.  In any event, the bid requests involved in this case expressly refer to "Davis-Bacon" compliance.

3

Act. *See id*. 40 U.S.C. § 3143. All of these requirements for contractors equally apply to subcontractors.

Aaron Construction regularly bid for, and sometimes obtained, federally-funded contracts with the County's Public Housing and Community Development ("PHCD")—a public housing agency managing over 9,200 units of public and mixed income housing in family and elderly housing developments—to repair vacant housing units and perform other miscellaneous work. The bids were in response to the County issuing RPQs and invitations for bids seeking bids for new projects for the renovation and repair of public housing units. Each RPQ contains a target price that takes into account the requirement for contractors to pay Davis-Bacon compliant wages. After receiving bids, the County awards the contract to the lowest bidder, provided that the bid conforms to the material terms and conditions of the County's invitation to bid associated with the RPQ.

As noted above, Aaron Construction won three RPQs from the County. Aaron Construction's bids for all three RPQs acknowledged the Act's wage requirements and represented that Aaron Construction did not expect to use subcontractors. Yet when federal agents executed a search warrant on Aaron Construction's primary office after opening an investigation into the company, they discovered subcontractor agreements in effect during each RPQ, including more than fifty subcontractor agreements for 2016 alone. These agreements indicated that Aaron

Construction would pay the subcontractors a flat rate regardless of hours expended. Indeed, at trial, several subcontractors testified that the Estepas did not ask them about the amount of hours the subcontractors and their workers worked and, instead, they paid them a per-unit flat fee, regardless of whether they worked overtime.

Despite not inquiring into the actual hours the subcontractors worked, the Estepas signed several certified payroll documents as accurately representing which employees were present at job sites and the hours those employees worked. For example, Javier signed certified payroll documents for the pay periods ending September 7 and 14, 2014, that listed Pedro Guzman as working in Miami. However, U.S. Department of Homeland Security records revealed that Guzman was in fact out of the country during those periods. Rather, Rony Sandoval was the person performing the work attributed to Guzman. Sandoval used Guzman's name and social security number because Sandoval was not legally authorized to work in the United States, and Aaron Construction would write checks made out to Guzman, who, in turn, would pay Sandoval. In another example, Javier and Diego both certified that Nicolas Segura worked certain hours for the week ending April 12, 2015. Segura, however, testified that he was paid a flat fee, never submitted his hours to Aaron Construction, and was at all times a subcontractor rather than an employee of Aaron Construction.

5

Occasionally, a contractor needs to hire a subcontractor after beginning work to address an unanticipated problem even though the contractor's bid did not indicate it would utilize subcontractors. Should that occur, the contractor is required to notify the County within ten business days of the subcontractors it plans to use. Additionally, the information about the new subcontractor should be included in the final estimate for payment packet for a project, which contractors must submit to the County before the County issues the payment. Despite Aaron Construction using subcontractors for the three bids, the final estimate for payment packets for those projects indicated that Aaron Construction did not use subcontractors.

On June 21, 2018, a grand jury indicted Javier and Diego in connection with the three public housing repair contracts that Aaron Construction procured following successful bids to the County. The grand jury subsequently returned two superseding indictments. The second superseding indictment alleged that the brothers agreed to, and did in fact, scheme to "unlawfully enrich themselves by securing PHCD bid awards and causing [the County] to make payments on those contracts by making materially false and fraudulent representations," and by concealing or omitting "material facts concerning, among other things, their utilization of subcontractors, the number of workers employed on the construction projects, and the status of those workers as full-time employees of Aaron Construction." Count 1 of the second superseding indictment charged the brothers

6

with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.  Counts 2 through 4 charged the brothers with substantive wire fraud, in violation of 18 U.S.C. § 1343.  Counts 5 through 7, which applied to Javier, and Count 8, which applied to Diego, charged the brothers with making false statements to the County's PHCD, which was acting as an agent in implementing a program funded by the federal government, in violation of 18 U.S.C. § 1001(a)(2).  Count 9 charged Javier with tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3).

Following pretrial motions, the case proceeded to jury trial at which Javier and Diego were jointly tried.  At trial, the government argued that the testimony and evidence demonstrated that the Estepas engaged in a scheme to underpay workers in violation of the Act and to conceal that underpayment from the County, e.g., by hiring and illegally paying subcontractors at flat pay rates, by not reporting the use of those subcontractors to the County, and by classifying some of those subcontractors as employees of Aaron Construction.  And, as a result of this scheme, Aaron Construction was able to artificially lower its costs and submit—and win— bids that competitors who paid the requisite wages may not have been able to afford, and the County paid Aaron Construction nearly $4 million between January 2014

and September 2016 in connection with those bids.[3]  This testimony and evidence are summarized as follows.

First, Indira Rajkumar-Futch, a procurement manager for the County's PHCD who oversees construction contracts at various public housing units located within the County, testified.  Rajkumar-Futch testified that she reviewed the specific bids and contracts related to Aaron Construction at issue in the case and explained the bidding and award process for projects that the County advertises to potential contractors, including how PHCD establishes the initial amount for the potential contract and the RPQ system.  She noted that the majority of funds PHCD received for its projects were from the federal government and that a contractor, once being awarded a bid, must comply with the Act's requirements as to worker wage rates, including as to its subcontractors.  She also explained that a contractor is required to report whether it intends to use subcontractors and that, if it initially does not intend to use subcontractors but later decides to do so, the contractor must inform the County within ten business days of the subcontractors it intends to use.

The government, through Rajkumar-Futch, introduced into evidence documents related to the 2014, 2015, and 2016 RPQs on which Aaron Construction successfully bid.  Rajkumar-Futch testified that Aaron Construction's formal bids

---

[3] The Estepas stipulated at trial that these payments from the County were interstate wire payments.

8

for those projects indicated that it would not use subcontractors and that it would comply with the Davis-Bacon requirements. She also testified that she met with both Javier and Diego, and neither ever informed her that they planned to use subcontractors as to the three RPQs. And she stated that if she knew a bidder was providing false information on the forms submitted with the bid, she would not accept the bid. On cross-examination, Rajkumar-Futch agreed that Aaron Construction had a good reputation with the public housing community and that the County approved of the work that Aaron Construction had done for the three RPQs. However, she noted that good work did not excuse lack of compliance with the Act. She also stated that Aaron Construction had not been fined by the County for Davis-Bacon wage violations.

Agent Matthew Broadhurst, an Assistant Special Agent working in the Office of the Inspector General for the U.S. Department of Labor, testified for the government. Broadhurst explained that the Department of Labor opened an investigation into Aaron Construction and that he was the evidence custodian for the search warrant executed on the company's office. Broadhurst testified that the investigators found subcontractor agreements for 2013, 2014, 2015, and 2016, as well as waivers and releases of lien, invoices, checks, and payment reports related to subcontractors and the RPQs at issue. Broadhurst also testified that, during the course of the investigation, he saw Guzman was listed as an employee of Aaron

Construction and that Guzman was not in the country during most of September 2014 based on travel records. Aaron Construction's certified payroll documents, which were signed by either Javier or Diego, and payroll checks, however, showed Guzman working on days when he was not in the United States. As to the certified payroll documents, Broadhurst testified that the forms required the signer to attest to the accuracy of the reported data—employees' hours and wages—and to confirm compliance with Davis-Bacon determinations, and further provided that the willful falsification of any of the statements contained within the form could subject a contractor or subcontractor to criminal prosecution.

Yanith Barrera, an owner of a roofing company who did subcontracting work for Aaron Construction, also testified. Barrera stated that his first subcontractor agreement with Aaron Construction was in early 2017 on the 2016 RPQ that Aaron Construction was awarded. Barrera stated that he was paid for this project via payroll checks and checks to his company, but that Javier never told him he was an employee of Aaron Construction. Barrera stated that the Department of Labor had interviewed him in April and October 2018.

Next, Mauricio Jimenez testified, explaining that he owned a construction company and entered into a subcontractor agreement with Aaron Construction for public housing work. Jimenez testified that he was paid a fixed price for each unit he worked on as a subcontractor, that no one at Aaron Construction ever asked him

10

the amount of hours he or his workers worked, and that, in his invoices to Aaron Construction, he never listed the amount of hours his workers worked. He stated that he and his workers worked at least sixty hours per week and were never paid overtime. He also testified that neither he nor his workers were ever employees of Aaron Construction and that Javier and Diego told him that they needed the names and social security numbers of three of his employees for payroll, even though Jimenez was employing seven workers at the time. Jimenez was paid with a payroll check and another check for his company, which he would use to pay his other workers. Jimenez also testified that Diego and Javier never told him not to bring undocumented workers to complete the work. Jimenez stated that he was interviewed by someone from the County while at the construction site. Jimenez also testified he never saw or filled out Aaron Construction's certified payroll document that stated he was an employee of Aaron Construction and listed the alleged amount of hours he worked during the week. On cross-examination, Jimenez stated he never filed a complaint about not being paid a proper wage and that Aaron Construction paid him the full amount of money pursuant to the subcontractor agreement.

Franciso Trujillo, a construction manager with the County's PHCD, also testified as a government witness. Trujillo provided testimony similar to Rajkumar-Futch's testimony on the RPQ and bidding processes, including the fact that

successful bidders were required to inform the County about the subcontractors they were using by the end of the project.  He also testified that the County relied upon the contractors being truthful when submitting their bids.  He agreed that subcontractor employees should not appear on a contractor's certified payroll. Trujillo stated that, while Aaron Construction did "good work" and had a "good reputation," his opinion would have changed if he knew the documents that Aaron Construction had submitted, which were signed by either of the Estepas, were not correct or if the employees were not being paid an hourly wage or overtime.  Trujillo also confirmed that contractors such as Aaron Construction were not supposed to have partially filled out HUD interview forms, which are used to determine if Davis-Bacon wage rates are being used by a contractor.  On cross-examination, Trujillo agreed that he had conducted five performance evaluations on projects Aaron Construction had worked, grading them to have "superior performance."  He could not recall if he had received any complaints that Aaron Construction failed to pay one of its employees or subcontractors.  But, on redirect, he testified that, even if the work is done well, it was not acceptable to the County that Aaron Construction did not comply with the Davis-Bacon requirements.

Anna Holder, the vice president of client services for FrankCrum, a company providing payroll and worker's compensation services to Aaron Construction, testified as a government witness.  Holder testified that Javier had signed a contract

with FrankCrum specifying the services to be provided, which stated that eighty percent of Aaron Construction's work was subcontracted and that FrankCrum did not process hours for subcontractor employees.

Nicolas Segura also testified as a government witness. Segura, who was operating a company providing maintenance and electrical services, had a subcontracting relationship with Aaron Construction. Segura did not consider himself to be an employee of Aaron Construction. He testified that Aaron Construction paid him lump sums for the subcontracting work he and his company did and that the amount of pay did not differ based on the amount of hours actually worked. He stated that he would send weekly invoices and was paid by Aaron Construction via two checks—one made out to him and one made out to his company. Segura stated that he had other workers, including his brother, help with the subcontracting work for Aaron Construction—whom he paid using the checks he received from Aaron Construction—and that he did not report his or any of the other workers' hours to anyone at Aaron Construction. He also was never asked by the Estepas for the hours he worked. Segura was shown certified payroll documents from Aaron Construction indicating that he and his brother worked thirty-two hours at a rate of $10 per hour for several pay periods, but Segura indicated he never told Aaron Construction that either of them had worked that amount. On cross-

examination, Segura stated that he was interviewed twice by government agents and that no one from Aaron Construction ever told him to hide the method of payment.

Rony Sandoval also testified for the government. Sandoval, who does not have legal immigration status, stated that he met with Javier, discussed doing remodeling work with him, and became an "employee" of Aaron Construction. Sandoval stated that the amount he was paid to remodel units was not based on the amount of hours he worked, but instead was a flat rate, and that he was not paid extra if the work took longer than anticipated. He also testified that he used Guzman's company and its license in order to do work for Aaron Construction and that both Estepas knew he was doing so and had no problem with the arrangement. Sandoval also used Guzman's social security number in order to receive payment. Sandoval was shown Aaron Construction's payroll documents that listed Guzman as working hours instead of him, and Sandoval testified that Guzman did not work with him on the projects.

Sandoval also brought other people to aid him in doing the renovation work, and they would work between eight to ten hours a day. Sandoval, however, never reported the hours he or the other workers worked to Javier and only discussed the "percentage of work that was done during the week" with Diego. And the Estepas never asked him to keep track of the hours worked on each project. He testified that, when it was time for payment, he received a separate check made out to Guzman's

14

company from Aaron Construction that he would use to pay the other workers. Sandoval further testified that he had a discussion with the Estepas about "what to say if an inspector showed up" to a project site. Sandoval was told to say that he and his workers worked for Aaron Construction and that they were painters, although the remodeling work done was not limited to painting. On cross-examination, Sandoval stated he was interviewed by federal agents but denied being promised any benefit from his cooperation with the investigation.

Guzman also testified as a government witness. Guzman stated that he allowed Sandoval to use his company so Sandoval could work. He testified that he did not know either of the Estepas and had never worked for them. Guzman knew of the agreement that Sandoval had reached with Aaron Construction but did not work on any of the projects or report any hours to the Estepas. He testified that he allowed Sandoval to use his personal information—his driver's license and social security number—in connection with the Aaron Construction projects. He also testified that his company would keep part of the money to cover administrative expenses and payments the company had made in connection with the projects. Guzman also stated he was out of the country on days that Aaron Construction had listed him as working on its payroll documents. On cross-examination, Guzman stated that he told federal investigators that Sandoval gave his company money for operation costs.

Orlando Blanco, the government's last witness, testified that his company entered into subcontractor agreements with Aaron Construction for remodeling work. Blanco was paid a fixed amount of money per unit and did not get more money if a project took more hours than anticipated. Blanco never reported the hours that he worked to the Estepas. After being shown Aaron Construction's certified payroll documents listing Blanco and his cousin as employees of Aaron Construction, Blanco testified that neither of them were Aaron Construction's employees and that they had not reported the hours on the payroll documents.

Following the conclusion of the government's case, the Estepas sought to present testimony to show that, to the extent that the Estepas had made any misrepresentations, the misrepresentations were immaterial. Additionally, the Estepas focused on presenting testimony demonstrating that the County was satisfied with Aaron Construction's work on the RPQs at issue in the case.

Jose Arnaez, a project manager for the County's PHCD, testified that he had supervised Aaron Construction's work "[o]n and off, for about 11 years," and that its work was excellent. However, during the government's cross-examination, Arnaez stated that, if he knew Aaron Construction was not paying Davis-Bacon wages, was not collecting hours, and not paying overtime, his opinion about the company would change. He also stated that there was no reason why Aaron Construction should have had half-filled-out interview forms in its office. Giselle

Castillo, a construction manager for the County's PHCD, testified that she "probably" sent Diego a Davis-Bacon wage interview form. She testified that Aaron Construction always completed its jobs for the County "on time and well." On cross-examination, however, Castillo testified that her opinion on Aaron Construction would be affected if she knew its workers were not being paid Davis-Bacon wages or if the company was not paying the workers for all the hours they worked. She also stated that Aaron Construction had indicated in its bids that it was not planning to use subcontractors and that, if she knew she had received false documents from Aaron Construction concerning subcontractor payments and supply lists, then she would not have processed the documents. She noted that the documentation associated with RPQs could be complicated. But she testified that she did not remember if the Estepas had ever told her they did not understand the forms or had asked her for copies of the forms in Spanish.

Lisette Martinez, an architect for the County and former chief of facilities for PHCD, also testified. Martinez testified that she had evaluated the quality of Aaron Construction's work and generally graded its work as "superior," "outstanding," and "exemplary." Similar to Arnaez and Castillo, Martinez testified on cross-examination that her opinion of Aaron Construction would be affected if she knew it was not paying its workers hourly or the Davis-Bacon wage. And Marcos Caines, a construction project manager for the County, testified that he supervised Aaron

17

Construction and that its overall performance was good and that the County was satisfied with its work. But, as the other County employees similarly testified, his opinion of Aaron Construction would be affected if he knew they were not paying their workers Davis-Bacon wages or by the hour.

Diego also testified on his own behalf. Diego testified that Aaron Construction had informed the County it planned to use temporary workers for the 2014 RPQ and that he never tried to hide that from the County. He explained that it was more expensive for his company to list workers as temporary employees than subcontractors, as Aaron Construction paid for their worker's compensation and taxes and fees on the workers' paychecks. Diego testified that Aaron Construction paid its subcontractors as temporary employees to ensure the subcontractor's workers would receive Davis-Bacon compliant wages and worker's compensation, as well as to ensure that all the workers were legally authorized to work in the United States. As to the interview forms, he testified he received them from Castillo via email.

Diego additionally testified that Marian Restrepo Sanchez was the Aaron Construction employee responsible for obtaining the information for the projects and filling out the paperwork, including the hours worked on each project. He stated that he and Javier sometimes personally did labor work on the projects they were awarded by the County. He denied having any knowledge about Sandoval using

18

Guzman's personal information. He testified he relied on Restrepo Sanchez's and the contractors' representations when he signed the certified payroll documents and assumed that all the information was correct. He claimed he did not know that any of the information was false and that he did not intend to defraud the government and did not intentionally falsify documents to receive funds from the County. And he contended that the separate check payments to the workers and contractors were so that the temporary workers would get payroll and the subcontracting company would be paid for the use of their crew. On cross-examination, Diego could not recall which projects he or Javier performed labor work on. He admitted he never told any of the County's employees that he did not understand the documents Aaron Construction was required to fill out for the RPQs. The government showed Diego documents from bids Aaron Construction made prior to 2014 in which Aaron Construction did not report it was using subcontractors, even though subcontractor agreements were found by the government during its investigation. He also admitted that he never disclosed the subcontractor agreements to the County but stated he "had no need to do it because [he] was paying them the payroll . . . [and] the taxes" and "was taking out the deductions, because at the end of the year [he] did a W-2 for them." He claimed he had discussed Davis-Bacon wages with all the subcontractors, although the agreements did not mention the Act. Diego also claimed that he had

time sheets recorded for all the certified payroll documents, although the Estepas had not presented them as evidence.

Upon the conclusion of the trial, the jury acquitted Javier on the witness tampering count but found Javier and Diego guilty on all the remaining counts. The district court sentenced Javier to 51-months' imprisonment and a three-year term of supervised release, and it sentenced Diego to 41-months' imprisonment and a three-year term of supervised release.[4] This timely appeal followed.

## II.   STANDARD OF REVIEW

Sufficiency of the evidence is a legal question that we review *de novo*. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). When addressing a challenge to the sufficiency of the evidence, we must draw all reasonable inferences in favor of the government's case and must "assume that the jury made all credibility choices in support of the verdict." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). We may not overturn the jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Capers*, 708 F.3d at 1297 (quoting *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991)); *accord Maxwell*, 579 F.3d at 1299.

---

[4] Following the start of the COVID-19 pandemic, Diego moved for the district court to redesignate the remainder of his sentence to home confinement in light of the pandemic. The district court granted Diego's motion. Additionally, Javier moved for the district court to redesignate the remainder of his sentence to home confinement and for compassionate release. The district court granted both motions and reduced Javier's sentence to time served effective the date of the order—August 10, 2020.

To support a conviction, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Capers*, 708 F.3d at 1297 (quoting *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989)). The government may introduce circumstantial evidence, but "reasonable inferences, not mere speculation, must support the conviction." *Id*. (quoting *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008)).

## III.    ANALYSIS

On appeal, the Estepas contend that the government's evidence was insufficient to sustain their wire fraud and conspiracy convictions for two reasons.[5] First, they assert that there was insufficient evidence of a scheme to defraud because the County did not suffer a financial loss. Second, the Estepas contend that the government presented insufficient evidence of the requisite *mens rea* for the crimes for which they were convicted.

The Estepas were convicted and sentenced on counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and wire fraud, in violation of 18 U.S.C. § 1343. The elements of wire fraud are "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate . . . wires in furtherance of that scheme,"

---

[5] Prior to oral argument, the Estepas separately moved to withdraw all the arguments they raised in their initial briefs except their arguments related to sufficiency of the evidence. We granted these motions and thus only address those sufficiency-of-the-evidence arguments.

21

and the government must prove both elements to sustain a defendant's conviction for wire fraud. *Maxwell*, 579 F.3d at 1299. "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* "A misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed.'" *Id.* (alteration in original) (quoting *United States v. Hasson*, 333 F.3d 1264, 1271 (11th Cir. 2003)). And, to prevail on the conspiracy charge, the government must additionally prove three things: "(1) agreement between two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in that agreement by the defendant; and (3) an overt act in furtherance of the agreement." *United States v. Broughton*, 689 F.3d 1260, 1277 (11th Cir. 2012); *see also Maxwell*, 579 F.3d at 1299.

As stated above, we must view the evidence in the light most favorable to the government. *Maxwell*, 579 F.3d at 1299. And based on the record evidence, which we have extensively detailed above, we hold a reasonable jury could find beyond a reasonable doubt that: (1) the Estepas engaged in a scheme to defraud by intentionally making material misrepresentations to the County that it intended to comply with the Davis-Bacon requirements and to not use subcontractors on the RPQs in order to receive federal funds associated with the RPQs from the County; and (2) the Estepas knowingly and voluntarily agreed to commit the scheme to

22

defraud and pursued overt acts in furtherance of that agreement. The Estepas won RPQ bids for Aaron Construction from the County in 2014, 2015, and 2016. When the Estepas bid on those three RPQs, they knowingly and materially misrepresented their intent to pay wages required by the Act, as well as their intention to use subcontractors on the paperwork they submitted. Despite the Estepas' representations that Aaron Construction would not use subcontractors, federal agents found a large number of subcontractor agreements at the Aaron Construction office during their execution of the search warrant. Additionally, after winning the bids from the County and performing work, the Estepas submitted payment packets to the County, in which the Estepas again represented that Aaron Construction was not using subcontractors. The payment packets included false certified payroll documents, which listed employees who either did not work on the specified jobs or were mislabeled as Aaron Construction employees when they were in fact subcontractors. Indeed, Guzman, who was listed on several of Aaron Construction's payroll documents, had never worked for Aaron Construction and was in fact out of the country during several of the pay periods at issue. Rather, Sandoval, using Guzman's personal information, was performing subcontracting work for Aaron Construction, and Sandoval testified that the Estepas were aware of this arrangement. And several of the individuals who did subcontracting work for Aaron Construction and were listed as "employees"—e.g., Jimenez, Segura, and Blanco—

testified at trial that they were *not* employees of Aaron Construction and had never seen the payroll documents that listed them as such.

Additionally, the evidence, viewed in the light most favorable to the government, shows that the Estepas signed the certified payroll statements listing the hours of its "temporary employees" despite never asking the "temporary employees" what hours they worked or paying them an hourly wage. The subcontractors consistently testified that they were paid flat rates, as opposed to an hourly wage, by Aaron Construction, that they were not paid overtime wages, that they never reported the amount of hours worked to the Estepas, and that the Estepas never inquired about their hours worked. Moreover, several subcontractors testified that they used other workers for the projects they took on for Aaron Construction; the Estepas, however, would only report some of those workers as employees. For example, Jimenez employed seven workers while doing subcontracting work for Aaron Construction, but the Estepas only asked for the information of three of Jimenez's employees.

The Estepas, however, contend that there was insufficient evidence of a scheme to defraud because the County did not suffer a financial loss from their conduct. Specifically, they assert that their misrepresentations did not affect the nature of the bargain because the County's interest was in obtaining high-quality, low-cost work, which is exactly what Aaron Construction provided. Thus, according

24

to the Estepas, any misrepresentations about whether Aaron Construction used subcontractors were not material, and the jury's convictions cannot be sustained.

This argument is without merit, and our precedent in *United States v. Maxwell* is instructive. In *Maxwell*, the defendant, a vice president of Fisk Electrical Corporation—a large, Texas-based electrical contracting corporation—obtained contracts from Miami-Dade County for which Fisk was not eligible because the work was meant to be performed by qualifying small, local businesses. 579 F.3d at 1288. The defendant obtained the contracts and funds on behalf of Fisk by misrepresenting that a qualifying business was subcontracted to complete the work and receive the program's payments when, in fact, Fisk was doing the work and receiving the payments. *See id.* at 1289–92. A grand jury indicted the defendant on numerous counts of mail and wire fraud, money laundering, and related conspiracies, and the paneled jury convicted the defendant. *See id.* at 1287–88.

On appeal, this Court affirmed the defendant's conviction and sentence. *Id.* at 1307. In doing so, this Court explained that the evidence demonstrated that the defendant made numerous misrepresentations to Miami-Dade County and took actions in support of those misrepresentations. *See id.* at 1290, 1300. This Court found that the misrepresentations were material—even though Fisk had completed the contracts' work—because without those misrepresentations, Fisk and its subcontractor would not have been awarded the contracts from the County. *See id.*

25

at 1288–89, 1300.  This Court rejected the defendant's argument that there was no scheme to defraud because the actions he took "did not deprive the County or the United States of money or property, because, in the end, the County and the United States received the electrical work they sought." *Id.* at 1302.  This Court explained that "financial loss is not at the core of these mail and wire frauds," but "[i]nstead, the penal statutes also seek to punish the intent to obtain money or property from a victim by means of fraud and deceit." *Id.*  Thus, "[r]egardless of the quality or cost of the work completed," the funds used to pay out the contracts were meant only for qualifying small, local businesses, and Fisk did not qualify as such a business.  *See id.* at 1302–03.  And this Court noted that "[t]he County and the United States were free to prescribe the rules of this contracting process, and the defendant was not free to dishonestly circumvent the worthy purpose of the set-aside program." *Id.* at 1303.

The Estepas attempt to distinguish *Maxwell* by claiming that it involved "preferential hiring, in which an actual purpose of the contract and the funding is to provide otherwise disadvantaged people opportunities for hiring to correct prior discrimination," while asserting that the Davis-Bacon requirements in this case only relate to a "policing objective" of the government, not the actual act of "defrauding the payor as to the identity of the person hired or the quality or extent of the work." We find this argument wholly without merit.  Under federal law, the County could not have lawfully granted Aaron Construction the contracts at issue had the Estepas

26

not certified that they would comply with the Act.  *See* 40 U.S.C. § 3142(a); 29 C.F.R. pt. 1, app. A.  And Rajkumar-Futch, the procurement manager for the County's PHCD, confirmed the materiality of the Estepas' misrepresentations when she testified that had the County known about the Estepas' intent to pay workers a flat rate and their failure to disclose the subcontractors, the County would not have awarded the contract.  Thus, as a result of the Estepas' misrepresentations, the County paid Aaron Construction money that it otherwise would not have.  While several County officials said that they were pleased with the work Aaron Construction performed, those officials also uniformly testified that their opinion of Aaron Construction would be affected if they had known about the misrepresentations.  Therefore, a reasonable jury had ample evidence from which it could conclude that the Estepas' misrepresentations were material—and constituted a scheme to defraud—beyond a reasonable doubt.

The Estepas also contend that the government presented insufficient evidence of the requisite *mens rea* for the crimes on which they were convicted—i.e., that they had fraudulent intent, as required for the substantive wire fraud counts, and that they knowingly conspired to defraud, as required for the conspiracy count. Specifically, they argue that their misstatements that certain subcontractors were temporary employees arose from a reasonable and good faith interpretation of a

27

complex regulatory regime and cannot form the basis of a criminal conviction. We disagree.

As explained above, to sustain a wire fraud conviction, the government must prove that a defendant intended to defraud, meaning he intended to make a material misrepresentation aimed at obtaining the property of another. *Maxwell*, 579 F.3d at 1299, 1302. And, for a conspiracy to commit wire fraud conviction, knowing and voluntary participation in an agreement to achieve an unlawful objective is the relevant intent. *Broughton*, 689 F.3d at 1277.

Viewed in the light most favorable to the government, *see Maxwell*, 579 F.3d at 1299, the record evidence demonstrates that the Estepas' misrepresentations were not isolated mistakes based on their misunderstanding of the paperwork associated with the RPQs. Rather, the Estepas engaged in a pervasive pattern of deceit before, during, and after bidding on the three RPQs enumerated in the indictment. While the Estepas reported to the County that Aaron Construction did not intend to use subcontractors and would comply with the Act and accurately report workers' wages and hours, the Estepas in fact personally negotiated with various subcontractors to work on the RPQs at issue, asking them for personal information such as driver's licenses and social security numbers and agreeing to pay them flat rates for the projects contrary to Davis-Bacon wage requirements. The Estepas' deceit continued with each falsely certified payroll document and the final payment packets from

28

Aaron Construction that they submitted to the County. Although none of the subcontractors who testified in this case reported their hours to the Estepas for the projects they worked, the Estepas, in Aaron Construction's certified payroll documents, represented that the subcontractors were employees of Aaron Construction and falsely recorded their hours worked and hourly wage. And, while the charged conduct in this case began with the 2014 RPQ, the government introduced evidence that the Estepas submitted documents with misrepresentations about subcontractors even prior to 2014.

Diego testified that he lacked knowledge of the inaccuracies in the payroll documents and assumed the information contained in them was correct, but the jury was free to disregard this testimony and instead credit the contrary evidence the government presented through its witnesses, i.e., that the Estepas knew they were misrepresenting to the County that Aaron Construction was not using subcontractors and they knew they were not complying with the Act. *See id.* at 1301. And, although Diego testified that he and Javier acted in good faith—and did not intend to make the misrepresentations at issue—and that it cost Aaron Construction more money to list the subcontractors as temporary employees, the jury was again free to consider and reject this evidence in light of the overwhelming amount of evidence concerning: (1) the Estepas' intent to make material misrepresentations to procure

29

the RPQs, and (2) their intent in knowingly and voluntarily agreeing to commit wire fraud and in carrying out actions in furtherance of the agreement.

Based on the record evidence, a reasonable jury could conclude beyond a reasonable doubt that the Estepas had the requisite intents for their convictions. We therefore conclude that the government's evidence was sufficient to demonstrate the requisite *mens rea* elements of the Estepas' wire fraud and conspiracy to commit wire fraud convictions.

## IV.   CONCLUSION

For the foregoing reasons, we hold that the government presented sufficient evidence to demonstrate that the Estepas: (1) intentionally participated in a scheme to defraud to constitute wire fraud and, (2) knowingly and voluntarily engaged in a conspiracy to commit wire fraud. We therefore affirm the Estepas' convictions and sentences for wire fraud and conspiracy to commit wire fraud.

**AFFIRMED.**