[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10027

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DWAYNE ERIC THOMPSON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:10-cr-00015-TJC-LLL-1

_____

_____

No. 24-10031

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DWAYNE ERIC THOMPSON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:09-cr-00117-TJC-MCR-1

_____

_____

No. 24-10030

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DWAYNE ERIC THOMPSON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cr-00067-TJC-JBT-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER,
Circuit Judges.

PER CURIAM:

Dwayne Eric Thompson appeals his conviction and sentence for possession of a firearm as a felon, 18 U.S.C. § 922(g)(1), and his sentence for violating supervised release. Thompson challenges the sufficiency of the evidence, the denial of his motion for a mistrial and new trial, and the upward variance from his Sentencing Guidelines range without prior notice. We affirm.

## I. BACKGROUND

A grand jury indicted Thompson with one count of possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). At trial, Officer Walter Umland testified that he was on patrol when he saw a car driving with dark window tint, and records showed the registered owner and driver, Thompson, had a pending investigation. Detective Thomas Sweat pulled Thompson over. Thompson and two female passengers got out of the car. During a search, officers found a firearm in the center console on top of other items. The women denied having a firearm in the car and denied seeing Thompson with a firearm. Further investigation revealed that Thompson was a convicted felon. Thompson was combative when Officer Umland obtained a DNA sample. On cross-examination, Officer Umland testified that he never saw Thompson with the firearm.

Detective Sweat testified that he pulled Thompson over and located the firearm. He wore a fresh pair of gloves, did not touch anything before touching the firearm, and placed the firearm and ammunition in a brown bag to avoid contamination. He never saw Thompson physically possess the firearm.

Quenita Mustafa, one of the passengers, testified that she did not know the firearm was in the car. Special Agent Lisa Gaul testified that the firearm crossed international and state lines. Shernelle Smith testified that she examined the firearm and magazine and did not find any latent fingerprints.

Brooke Hoover testified that there was a mixture of four donors from both the firearm and magazine swabs, and Thompson was a possible contributor. She explained that the mixed DNA profile for the firearm swab was more than 700 billion times more likely to occur if the sample was from Thompson and 3 other individuals as opposed to 4 unrelated individuals. She explained that the mixed DNA profile for the magazine swab was about 14,000 times more likely to occur if the sample was from Thompson and 3 other individuals as opposed to 4 unrelated individuals. On cross-examination, Hoover testified that DNA could reach a surface from direct contact or indirect transfer through an intermediary. She stated that it was possible for DNA to transfer from an intermediary but was not likely through dry touch. On redirect, Hoover testified that it was more likely for DNA to end up on an item because it was directly handled than because it was transferred.

The parties stipulated that Thompson knew he had been previously convicted of a felony. The government rested, and Thompson moved for a judgment of acquittal. He argued that the government did not prove he knowingly possessed the firearm because no witness stated he possessed the firearm. The district court denied the motion.

The defense called Charlesana Thomas, Thompson's girlfriend and the second passenger. She testified that she did not see Thompson with a firearm the day of the stop and had never seen him with a firearm before. The defense also called Tearron Byrd, Thompson's friend, who testified that a couple of days before the

traffic stop, he put the firearm in the console of Thompson's car and forgot about it. He did not tell Thompson about the firearm. Byrd did not remember a lot as he had been drinking heavily.

Thompson did not testify, and the defense rested. Thompson renewed his motion for a judgment of acquittal on the same grounds as his initial motion and because one of the defense's witnesses stated it was his firearm. The district court denied the motion.

The district court instructed the jury, and the jury began to deliberate at 1:35 p.m. At 3:35 p.m., the court explained that it received two requests from the jury, including one for another verdict form. Before it was able to accommodate that request, the jury submitted a note stating, "There are 11 [g]uilty and 1 not [g]uilty[.] What do we do they are ready to [g]o [h]ome[?]" As the district court was preparing to discuss the communication with the parties, the jury submitted a verdict form, which read "NOT GUILTY 0 GUILTY 12 SO SAY WE ALL, NO" with the wrong date. The 0 looked like it had been written over a 1 and the 12 looked like it had been written over an 11.

Thompson requested a mistrial on the ground that there was some coercion based on the changed vote of a holdout on the jury and the note showing that the jury wanted to go home. The district court determined that it could not accept the verdict form based on its inconsistencies. It declined to declare a mistrial because it could provide a charge under *Allen v. United States*, 164 U.S. 492 (1896).

The district court concluded that an *Allen* charge would not be coercive because the jury had deliberated for only two hours; the jury had not yet reported being deadlocked and instructed to continue; the modified charge would not imply that the jurors violated their oaths or acted improperly by failing to reach a verdict; and the time between the supplemental instruction and verdict was unknown. The district court stated that it would instruct the jurors that they were not expected to give up their honest beliefs about the evidence. It denied Thompson's motion for a mistrial over Thompson's objection.

The jury returned and the district court explained the communications it received and the issues with the verdict form. The district court then gave the jury the modified *Allen* charge. The jury exited at 4:13 p.m. and returned at 4:19 p.m. The jury found Thompson guilty.

Thompson renewed his motion for a mistrial and filed a renewed motion for judgment of acquittal or motion for new trial. He argued that the evidence was insufficient to prove that he knowingly possessed the firearm and that the verdict was the result of coercion or failure to follow the jury instructions.

The district court denied Thompson's motions. It ruled that there was sufficient evidence of constructive possession because officers found the firearm in the center console of the vehicle Thompson owned and was driving and his DNA was on the firearm. It found that indirect transfer of DNA, though possible, was not probable and that Thompson was combative when Officer Umland

obtained his DNA sample. It further found that the jury could have disbelieved Byrd's testimony as not credible. It also ruled that its *Allen* charge was not coercive because the sequence of events suggested that the first verdict form reflected the jury's unanimous verdict and the *Allen* charge's language was not coercive.

Thompson's presentence investigation report recorded a total offense level of 18 and a criminal history category III, which resulted in a guideline range of 33 to 41 months of imprisonment. At sentencing, the district court stated it considered all the statutory sentencing factors, 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, Thompson's history and characteristics, the need to promote respect for law, afford adequate deterrence, and protect the public from further crimes. It then imposed an "upward variance" of 60 months of imprisonment and a consecutive sentence of 24 months of imprisonment for two supervised release violations.

## II. STANDARDS OF REVIEW

Three standards of review govern this appeal. We review a challenge to the sufficiency of the evidence *de novo*, and we view the evidence and draw all reasonable inferences in the government's favor. *United States v. Beach*, 80 F.4th 1245, 1255, 1258 (11th Cir. 2023). We will uphold a conviction "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* at 1255 (citation and internal quotation marks omitted). We review the denial of motions for a mistrial and a new trial for abuse of discretion. *United States v. Capers*,

708 F.3d 1286, 1298 (11th Cir. 2013). We review for plain error an objection to the failure to provide notice of an upward variance when raised for the first time on appeal. *United States v. Hall*, 965 F.3d 1281, 1296 (11th Cir. 2020).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain that sufficient evidence supports Thompson's conviction. Second, we explain that the district court did not abuse its discretion in denying his motions for a mistrial and new trial. Third, we explain that the district court did not plainly err in imposing an upward variance without providing notice.

### A. Sufficient Evidence Supports Thompson's Conviction.

Thompson argues that the government failed to present sufficient evidence that he knowingly possessed the firearm. A defendant's mere presence near a firearm is insufficient to establish constructive possession. *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). The government must prove through direct or circumstantial evidence that the defendant was aware of the firearm's presence and had the ability and intent to exercise dominion and control over the firearm. *Id.* The government may establish constructive possession when the defendant exercised ownership or control over the car concealing the firearm. *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004).

There was sufficient evidence that Thompson constructively possessed the firearm. Officers found the firearm in the center console of the car Thompson owned and was driving. *See id.*

Hoover testified that it was highly likely that Thompson's DNA was on the firearm. Although she stated it was possible for Thompson's DNA to transfer to the firearm from other objects, it was not likely, and the jury was allowed to accept this reasonable interpretation of the evidence. *See Beach*, 80 F.4th at 1256 ("The jury is free to choose among alternative, reasonable interpretations of the evidence."). And officers testified that Thompson was combative when they took a DNA sample, which could suggest he knew about the firearm's presence in the car. *Cf. United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004) (holding that resisting arrest could show that the defendant realized officers would discover the firearm in a post-arrest search). The jury was free to discredit Byrd's testimony that the firearm was his and Thomas's testimony that she never saw Thompson with a firearm. *See United States v. Estepa*, 998 F.3d 898, 908 (11th Cir. 2021) (This Court must "assume that the jury made all credibility choices in support of the verdict." (citation and internal quotation marks omitted)). Sufficient evidence supports Thompson's conviction.

### B. The District Court Did Not Abuse its Discretion in Denying Thompson's Motions for a Mistrial and a New Trial.

Thompson argues that he was entitled to a mistrial or new trial because either the jury did not follow the *Allen* instruction or the instruction coerced the jury into reaching a decision. District courts have broad discretion in issuing *Allen* charges but must take care not to "coerce any juror to give up an honest belief." *United States v. Anderson*, 1 F.4th 1244, 1269 (11th Cir. 2021) (citation and internal quotation marks omitted). We have identified five

non-exhaustive factors we consider when reviewing the effect of an *Allen* instruction, including: the total length of deliberations, the number of times the court instructed the jury to resume deliberations, whether the court knew of the jury's split, whether the instructions imply jurors violate their oaths by failing to reach a verdict, and the time between the final instruction and the verdict. *Brewster v. Hetzel*, 913 F.3d 1042, 1053 (11th Cir. 2019). "[W]e consider the language of the charge and the totality of the circumstances under which it was delivered." *Anderson*, 1 F.4th at 1269 (citation and internal quotation marks omitted).

The district court did not abuse its discretion in denying Thompson's motions for a mistrial and new trial. We presume the jury followed the *Allen* instruction. *See United States v. Valdiviez-Garza*, 669 F.3d 1199, 1201 (11th Cir. 2012). And the totality of the circumstances does not establish that the instruction was coercive. The first verdict form suggested the jury reached a unanimous verdict before the *Allen* charge, which explains the short duration of deliberations after the charge. If a juror changed his position based on input from other members of the jury, that change does not constitute impermissible coercion. *See Brewster*, 913 F.3d at 1053 ("[S]uch pressure is a natural function of sending twelve persons into a jury room to deliberate." (citation and internal quotation marks omitted)). The jury had been deliberating for only two hours before the charge, and the district court instructed the jury to continue deliberating once, omitted language about violating their oaths, and included language about not giving up their

honest beliefs. *See id.*; *Anderson*, 1 F.4th at 1269. The *Allen* charge was not coercive.

### C. *The District Court Did Not Plainly Err by Failing to Provide Notice Before Imposing an Upward Variance.*

Thompson argues that the district court plainly erred by failing to provide notice before imposing an upward variance. We disagree. A district court must provide notice before imposing a departure, not a variance. *Hall*, 965 F.3d at 1295–96. The district court explained that it was imposing an upward variance and relied on the statutory sentencing factors, 18 U.S.C. § 3553(a), not a specific guideline departure provision, so it was not required to provide prior notice. *See Hall*, 965 F.3d at 1296.

### IV. CONCLUSION

We **AFFIRM** Thompson's conviction and sentences.