**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12817

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CHARLES GRIM RUDOLPH,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cr-80002-KAM-1

————————————————

Before ABUDU, KIDD, and MARCUS, Circuit Judges.

PER CURIAM:

Charles Grim Rudolph appeals his conviction for knowingly possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in denying his motion for a

judgment of acquittal because the evidence was insufficient for a reasonable jury to convict him. After thorough review, we affirm.

We review a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for a judgment of acquittal *de novo*. *United States v. Beach*, 80 F.4th 1245, 1258 (11th Cir. 2023). When reviewing the denial of a motion for judgment of acquittal, we view all facts and inferences in the light most favorable to the government. *Id.* at 1255. The evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt, and the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.* at 1255–56. We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* at 1255.

The test for sufficiency of evidence is the same regardless of whether the evidence is direct or circumstantial, with no distinction in the weight given to each. *United States v. Guevara*, 894 F.3d 1301, 1307 (11th Cir. 2018). But where the government relies on circumstantial evidence, "'reasonable inferences, not mere speculation, must support the conviction.'" *United States v. Estepa*, 998 F.3d 898, 908 (11th Cir. 2021).

It is unlawful for any person convicted of a crime -- punishable by more than one year of imprisonment -- to possess, in or affecting commerce, any firearm or ammunition. 18 U.S.C. § 922(g)(1). The elements of possession of a firearm by a felon are: (1) the defendant was a felon; (2) the defendant knew he was barred

from possessing a firearm; (3) the defendant knowingly possessed a firearm; and (4) the firearm affected or was in interstate commerce. *Rehaif v. United States*, 588 U.S. 225, 237 (2019); *United States v. Seabrooks*, 839 F.3d 1326, 1336 (11th Cir. 2016).

Possession can be actual or constructive. *United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019). Actual possession exists if the defendant had physical possession or personal dominion over the object at issue. *Id.* Constructive possession may be exclusive or shared with others, and it exists where the defendant exercises ownership, dominion, or control over the firearm, or has the power and intention to exercise dominion or control. *United States v. Flanders*, 752 F.3d 1317, 1332 (11th Cir. 2014); *United States v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004). A defendant has constructive possession of ammunition or a firearm if he "(1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011).

"A defendant's mere presence in the area of an object or awareness of its location is not sufficient to establish possession." *United States v. Green*, 873 F.3d 846, 852–53 (11th Cir. 2017) (citation modified). So, we've held that the evidence that the defendant was walking with another person who carried a suitcase containing a firearm with no forensic evidence tying the defendant to the firearm was insufficient to show possession, since it merely proved that the defendant was near the firearm. *United States v. Pedro*, 999 F.2d 497, 501–02 (11th Cir. 1993). On the other hand, the presence

of a firearm under the driver's seat of a car, in which the defendant was a passenger, shows that the defendant had sufficient access to the firearm to establish possession. *United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992). We've also held that a firearm found in the glove compartment of the defendant's car along with a copy of the defendant's tag receipt showing his ownership of the car, combined with the fact that the defendant was in the driver's seat before the search and had a prior conviction for possession of a firearm was "sufficient to establish constructive possession." *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

Here, Rudolph argues that the district court erred in denying his motion for judgment of acquittal on his claim that the evidence was insufficient for a jury to convict him of possessing a firearm. The record reflects that Rudolph was driving the car in which the firearm was discovered when a law enforcement officer initiated a traffic stop. The firearm was in the purse of the passenger, Laticia Bradley, and the purse was located next to the center console. Rudolph says that the firearm's proximity to him was insufficient to prove the knowing possession element of his conviction, *see Pedro*, 999 F.2d at 501–02, the only element he challenges on appeal.

Viewing the evidence in the light most favorable to the government, we cannot say that the evidence was insufficient for a jury to convict him of knowingly possessing a firearm. Most significantly, La'Nisha Gittens, a forensic scientist from the police forensic biology unit, gave testimony that tied Rudolph to the firearm. She reported that there was "very strong support" that Rudolph's

DNA was on the firearm's trigger -- where Rudolph's DNA contributed 84% of the trigger swab -- *and* on the grip -- where Rudolph's DNA contributed 94% of the grip swab. On cross-examination, Gittens admitted the possibility that DNA could transfer from item to item within a purse, but on redirect, she testified that a DNA sample that was the result of multiple transfers typically is of lower quality than what she received and less likely to generate a full DNA summary -- testimony the jury was free to focus on. *See Beach*, 80 F.4th at 1255; *Estepa*, 998 F.3d at 908. On this evidence, it was reasonable for the jury to infer that Rudolph knowingly had the requisite control and dominion to constructively possess the firearm or had actually possessed the firearm before it was placed into the purse. This is especially true since Rudolph's DNA was found on the trigger and the grip of the discovered firearm, areas consistent with possession, not an accidental touching or transfer.

Moreover, circumstantial evidence established Rudolph's knowing possession of the gun. At trial, West Palm Beach Police Officer Michael Borgen testified that on the evening in question, he had initiated a traffic stop when he saw illegally dark tinted windows on a Mazda CX-5. Borgen pulled his police vehicle behind the Mazda and turned on his lights. Rather than stopping, the Mazda sped up. Borgen activated his siren and sped up to catch it. After about 17 seconds, the Mazda finally pulled over.

Once the Mazda stopped, Officer Borgen used his spotlights to illuminate its interior. As Borgen approached the passenger side of the car, the driver moved his right arm and shoulder toward the

center console area and then quickly back to his original position. When Borgen arrived at the passenger side, he saw narcotics and an open purse around the center console. Borgen asked if Rudolph, the driver, had his driver's license, and Rudolph presented a driver's license that had been suspended. Borgen asked Rudolph to step out of the Mazda, and while talking to police outside the car, Rudolph told officers that he had recently recovered from being shot. Borgen asked if there was anything illegal in the car, and Rudolph said there was some "party stuff," presumably referring to the narcotics. Borgen said that Rudolph was visibly nervous, shifting from one foot to the other, leading Borgen to ask if Rudolph was planning to "take off." When Borgen searched the car, he opened the purse and saw the firearm. It was fully loaded with 6 rounds of ammunition.

Officer's Borgen testimony -- that during his initial approach, Rudolph moved his arm toward the center console, where the purse with the firearm was located -- demonstrated at the very least that Rudolph had easy access to the firearm. *See Gates*, 967 F.2d at 499; *Howard*, 742 F.3d at 1341; *Gunn*, 369 F.3d at 1234. Further, the evidence of Rudolph's suspicious driving, furtive movements and anxiety concerning the search allowed the jury to infer Rudolph's knowing possession of the gun. *See United States v. Stanley*, 24 F.3d 1314, 1320 & n.50 (11th Cir. 1994). The jury also had before it state-of-mind evidence from Rudolph's prior conviction for possession of a firearm or ammunition by a felon. *See United States v. Ochoa*, 941 F.3d 1074, 1106 (11th Cir. 2019); *Howard*, 742 F.3d at 1341.

In short, a reasonable construction of the testimony offered at trial and the presence of Rudolph's DNA on the trigger and grip of the firearm allowed the jury to find him guilty of possession of a firearm as a convicted felon beyond a reasonable doubt. *Beach*, 80 F.4th at 1255–56.  Accordingly, we affirm.

**AFFIRMED.**